**UNITED STATES COURT OF APPEALS**
<u>Filed 5/24/96</u>TENTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.                             Case No. 95-5140

CASTER CLYDE BUCK, JR,       (D.C. 95-CR-5-K)
                                    (Northern District of Oklahoma)
     Defendant-Appellant.

---

**ORDER AND JUDGMENT**[*]

---

Before BRORBY, EBEL, and HENRY, Circuit Judges.

---

After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  The case is therefore ordered submitted without oral argument.

Mr. Caster Clyde Buck appeals the district court's sentence of him to sixty months in prison on each of the three counts to which Mr. Buck pleaded guilty.  We exercise

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we affirm.

## I. BACKGROUND

On January 13, 1995, Mr. Buck was indicted on five counts. A superseding indictment followed on February 13, 1995, which indicted Mr. Buck on the same five counts in the original indictment plus one additional count. These six counts were as follows: count one alleged that Mr. Buck committed bankruptcy fraud under 18 U.S.C. §§ 2 and 152; count two alleged that he conducted an illegal gambling business under 18 U.S.C. §§ 2 and 1955; count three charged him with conspiring to conduct an illegal gambling business in violation of 18 U.S.C. § 371; count four alleged that he threatened and intimidated a witness, Edwina Augusta Butler, with the intent to influence her testimony in the grand jury proceeding in this matter in violation of 18 U.S.C. § 1512(b)(1); count five charged him with threatening and intimidating another witness, Tammy Ann Buck Asher, with the intent to influence her testimony in the criminal investigation, the grand jury proceeding, and the civil judicial forfeiture in violation of 18 U.S.C. § 1512(b)(1); and count six alleged that Mr. Buck, after having been previously convicted of a felony or felonies, possessed sixteen firearms that had been shipped and transported in interstate and foreign commerce, in violation of 18 U.S.C. § § 922(g) and 924(a)(2). On February 28, 1995, Mr. Buck pleaded guilty to counts one, three, and six of the superseding indictment. In exchange, the government agreed to dismiss counts two, four, and five.

On May 3, 1995, Mr. Buck filed both a motion for a copy of the sentencing recommendation that the United States Probation Office had relayed to the United States District Court for the Northern District of Oklahoma and objections to the presentence report.  The district court denied Mr. Buck's motion on May 16, 1995.  On May 31 and June 1, 1995, the district court conducted a two-day sentencing hearing.  At the conclusion of the hearing, the district court adopted the presentence report's factual findings and application of the sentencing guidelines.  The district court determined that Mr. Buck had a total offense level of twenty-four and a criminal history category of I.  This yielded an imprisonment range of fifty-one to sixty months on counts one and three and of fifty-one to sixty-three months on count six.  On June 7, 1995, the district court sentenced Mr. Buck to sixty months in prison on each of counts one, three, and six, with each sentence to run concurrently, and to three years of supervised release; the district court further ordered Mr. Buck to pay a $10,000 fine as to count one and to pay a $150 special monetary assessment.

## II. DISCUSSION

Mr. Buck asserts five claims on appeal.  First, he claims that the district court erred in denying his request for a copy of the U.S. Probation Office's sentencing recommendation.  Second, he argues that because some of his firearms seized by the government were part of his gun collection, the district court erred in not decreasing his offense level under U.S.S.G. § 2K2.1(b)(2).  Third, he urges that the district court erred in

enhancing his offense level under U.S.S.G. § 2K2.1(b)(5) for the possession of firearms in connection with the commission of a felony. Fourth, he claims that the district court erred in enhancing his offense level under U.S.S.G. § 3C1.1 for obstructing justice. Finally, he asserts that the district court erred in failing to give him a reduction in his offense level under U.S.S.G. § 3E1.1 for his timely acceptance of responsibility for his offenses. We affirm the district court's dismissal of the above claims.

## A. The district court's denial of Mr. Buck's request for a copy of the sentencing recommendation

Mr. Buck claims that the district court erred in denying Mr. Buck's request for a copy of the U.S. Probation Office's sentencing recommendation. In denying his request, the district court stated that it had the discretion to do so under Federal Rule of Criminal Procedure 32(b)(6)(A). See Rec. vol. I, doc. 23. This rule states:

> Not less than 35 days before the sentencing hearing -- unless the defendant waives this minimum period -- the probation officer must furnish the presentence report to the defendant, the defendant's counsel, and the attorney for the Government. The court may, by local rule or in individual cases, direct that the probation officer not disclose the probation officer's recommendation, if any, on the sentence.

Fed. R. Crim. P. 32(b)(6)(A) (emphasis added). Here, the applicable local rule, Rule 32.1 of the local criminal rules for the Northern District of Oklahoma, does not prohibit the probation officer from disclosing his or her recommendation, if any, on the defendant's sentence. Therefore, the district court could so direct the probation officer only in

4

individual cases through its exercise of discretion, which is what occurred here.[1]  Mr.

Buck has failed to show that the district court abused its discretion in ordering that the

probation officer's sentencing recommendation not be disclosed.

Even if Mr. Buck could establish a violation of Rule 32(b)(6)(A) by showing such

an abuse of discretion by the district court, he would have to show that he was prejudiced

by the Rule 32 violation before we would remand for resentencing.  See United States v.

Archer, 70 F.3d 1149, 1151 (10th Cir. 1995); United States v. Rangel-Arreola, 991 F.2d

1519, 1526 n.5 (10th Cir. 1993).  Mr. Buck has failed to show how he was prejudiced by

the district court's alleged violation of Rule 32 here through its order of nondisclosure.

We therefore affirm the district court's dismissal of this claim.

### B. The district court's refusal to apply U.S.S.G. § 2K2.1(b)(2) to decrease Mr. Buck's offense level

The district court enhanced Mr. Buck's offense level by four points under U.S.S.G.

§ 2K2.1(b)(1)(D) based on one of Mr. Buck's offenses involving thirteen to twenty-four

firearms.  The district court in fact found that Mr. Buck "possessed up to 25 or 26

weapons," which is well above the thirteen firearms needed for a four-level enhancement

under § 2K2.1(b)(1)(D).  See Rec. vol. IV, at 230.  Sixteen of these firearms were found

during a consent search by law enforcement of a rental storage unit leased to Greg

---

[1]In fact, the district court expressed at the sentencing hearing that "in every courtroom sentencing" it had ordered that the sentencing recommendation not be disclosed. See Rec. vol. III, at 4.

Hutchinson, an employee of the Passions Club, Mr. Buck's nightclub, and at least nine of these firearms were revealed through testimony at Mr. Buck's sentencing hearing. On appeal, Mr. Buck does not challenge the district court's finding that he possessed the above firearms; instead, he claims that under U.S.S.G. § 2K2.1(b)(2), the district court erred in refusing to decrease his offense level to a level six because some of the guns seized were part of his gun collection.

Section 2K2.1(b)(2) states that "[i]f the defendant . . . possessed all ammunition and firearms solely for lawful sporting purposes or collection, . . . decrease the offense level . . . to level 6." See also U.S.S.G. § 2K2.1, comment. (n. 10). Under United States v. Kirk, 894 F.2d 1162, 1164 (10th Cir. 1990), in order to receive a decrease in his offense level, Mr. Buck had to prove to the district court by a preponderance of the evidence that he was entitled to such a decrease. Mr. Buck claims that he made this showing through the testimony of Ms. Barbara Bruder and of Ms. Tammy Buck Asher, which he claims established that some of his twenty-five firearms "were part of a collection"; see Aplt's Br. at 9; he does not specify the exact number of firearms that fit this description. This, he argues, entitled him to a four-level decrease under § 2K2.1(b)(2).

We review the district court's factual determinations for clear error, e.g., United States v. Haar, 931 F.2d 1368, 1377 (10th Cir. 1991), and its application and interpretation of the sentencing guidelines de novo, United States v. Norman, 951 F.2d

1182, 1184 (10th Cir. 1991); United States v. Agbai, 930 F.2d 1447, 1448 (10th Cir. 1991). We find no error in the district court's refusal to apply § 2K2.1(b)(2). The district court's finding that Mr. Buck did not show that the firearms were used solely for hunting or collecting, see Rec. vol. IV, at 231, is not clearly erroneous. Testimony at the sentencing hearing revealed that he was not a sportsman, see Rec. vol. III, at 45, 56, 72-73, and that at least thirteen of his firearms were not part of a collection, see id. at 12-14. Thus, because § 2K2.1(b)(2) clearly does not apply in this case to decrease Mr. Buck's offense level, we affirm the district court's decision not to apply it.

### C. The district court's enhancement of Mr. Buck's offense level under § 2K2.1(b)(5) for the possession of firearms in connection with the commission of a felony.

Mr. Buck claims that the government did not meet its burden of proving to the district court by a preponderance of the evidence that his offense level should be increased under U.S.S.G. § 2K2.1(b)(5). See United States v. Gomez-Arrellano, 5 F.3d 464, 466 (10th Cir. 1993); United States v. Reid, 911 F.2d 1456, 1461 (10th Cir. 1990), cert. denied, 498 U.S. 1097 (1991). Specifically, Mr. Buck argues that the legal standard that the government was required to prove under § 2K2.1(b)(5) was that he "had ready access to the firearm during the commission of his crime." Aplt's Br. at 10. He claims that no evidence was presented to meet this standard. Id. Therefore, he argues, the district court's enhancement under this provision, which was based on Mr. Buck's possession of firearms in connection with the felony of illegal gambling, see Rec. vol. IV,

7

at 231-32, was erroneous.

U.S.S.G. § 2K2.1(b)(5) allows a four-level enhancement in a defendant's offense level

> [i]f the defendant used or possessed any firearm or ammunition <u>in connection with</u> another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense.

U.S.S.G. § 2K2.1(b)(5) (emphasis added). We have held that this enhancement is proper where "the government shows that the weapon facilitates or has the potential to facilitate" a felony. See <u>Gomez-Arrellano</u>, 5 F.3d at 466-67. The § 2K2.1(b)(5) standard announced in <u>Gomez-Arrellano</u> was based on an analogy to 18 U.S.C. § 924(c)(1). § 924(c)(1) imposes imprisonment upon a person who "during and <u>in relation to</u> any . . . drug trafficking crime . . . uses or carries a firearm." 18 U.S.C. § 924(c)(1) (emphasis added). In establishing the § 2K2.1(b)(5) "in connection with" standard, the <u>Gomez-Arrellano</u> court implicitly analogized the "in relation to" element of § 924(c)(1) to the "in connection with" element of § 2K2.1(b)(5). <u>See id.</u> The "in relation to" element of § 924(c)(1) requires that the firearm "at least must 'facilitat[e] or ha[ve] the potential of facilitating,' the drug trafficking offense." <u>Smith v. United States</u>, 508 U.S. 223, 238 (1993) (quoting <u>United States v. Stewart</u>, 779 F.2d 538, 540 (9th Cir. 1985)).[2]

Thus, in order to review the district court's four-level enhancement of Mr. Buck's

---

[2]The recent definition by the Supreme Court of the "use" element of § 924(c)(1), <u>see</u> <u>Bailey v. United States</u>, 116 S. Ct. 501, 505-06 (1995), does not affect the <u>Smith</u> Court's analysis of the "in relation to" prong of § 924(c)(1).

sentence under § 2K2.1(b)(5), we must determine whether the district court's factual findings support the conclusion that Mr. Buck's firearms "facilitate[d] or ha[d] the potential to facilitate" a felony. See Gomez-Arrellano, 5 F.3d at 466-67. Even if the Gomez-Arrellano standard were found to be the equivalent of Mr. Buck's proposed standard of ready "access to the firearm during the commission of [the] crime," see Aplt's Br. at 10, which this circuit has not yet determined, we find that the government has met that standard here, making the district court's enhancement proper. The district court made the following findings at the conclusion of Mr. Buck's sentencing hearing:

> The evidence deduced at this hearing revealed that the defendant used various firearms directly in connection with his gambling offense, and the testimony from witnesses [was] to the effect that the defendant normally carried at least one firearm, often two, on his person while working at the club where the gambling operation is [sic] held. He also frequently placed a weapon in a strategic place within the club. These are testimony [sic] -- the testimony the Court relies on in this regard from the employees who were there and were in a better position to observe this conduct than perhaps the half sister who was there as a patron of the club. He has admitted placing a weapon in a strategic place behind the bar within the club. These weapons helped the defendant protect himself and the money derived while operating the gambling enterprise.

Rec. vol. IV, at 231-32. After a review of the record, we find that these findings are not clearly erroneous; see Rec. vol. III, at 14-15, 43-46, 71-72; they support the conclusion that Mr. Buck's firearms "facilitate[d] or ha[d] the potential to facilitate" his illegal gambling operation, see Gomez-Arrellano, 5 F.3d at 466-67, and even that Mr. Buck had "ready access" to them during the commission of his illegal gambling offense. We therefore affirm the district court's enhancement of Mr. Buck's offense level under §

9

2K2.1(b)(5).

## D. The district court's enhancement of Mr. Buck's offense level under U.S.S.G. § 3C1.1 for the obstruction of justice

On appeal, Mr. Buck claims that there was insufficient evidence to support the district court's two-level enhancement of his offense level under U.S.S.G. § 3C1.1 for the obstruction of justice. Mr. Buck claims that there was "absolutely no evidence introduced that the conduct of Buck, if true, impeded or obstructed any investigation of the gambling charges or the bankruptcy fraud charges." See Aplt's Br. at 11.

As the district court noted, see Rec. vol. IV, at 232, the plea agreement between Mr. Buck and the United States stipulated that Mr. Buck obstructed justice by

> recruiting Eddie Butler to falsely claim the $46,000.00 in U.S. Currency found in Bob's Beer Barrel/Passions Club was hers instead of the defendant's as well as instructing Butler to prepare false records to support this claim, by promising Eddie Butler one-half of the money recovered from the federal agents, by recruiting his ex-wife Tammy Buck to falsely claim that she was the owner of some of the assets seized by the federal agents and by threatening to withhold one-half of her child support payment until he saw what her grand jury testimony had been.

Aple's Br., Second Attach., at 8. The record supports the above stipulations, see Rec. vol. III, at 15-16, 18-22, 34-35, 75-77, 81-86, as well as the district court's further findings of fact that Mr. Buck, after pleading guilty, contacted Ms. Tammy Buck and "told her to have his guns sold that were in the possession of Robert Murphy and the money given to his common law wife, Debbie Buck and not to tell authorities," Rec. vol. IV, at 233; see Rec. vol. III, at 103-04. Contrary to Mr. Buck's claim that the above evidence was

10

insufficient to establish obstruction of justice under § 3C1.1, Application Note 3 to § 3C1.1, which lists examples of the types of conduct covered by § 3C1.1, illustrates that the above conduct clearly supports the district court's two-level enhancement of Mr. Buck's offense level for the obstruction of justice. See U.S.S.G. § 3C1.1, comment. (n. 3). We therefore affirm the district court's enhancement of Mr. Buck's sentence under § 3C1.1.

**E. The district court's refusal to reduce Mr. Buck's offense level for the acceptance of responsibility under U.S.S.G. § 3E1.1**

Mr. Buck asserts that because he pleaded guilty "in a timely manner" and because "he turned a large number of the weapons over to the government early on during the investigation," the district court erred in refusing to decrease his offense level under U.S.S.G. § 3E1.1 for his acceptance of responsibility for his offenses. See Aplt's Br. at 11-12. Section 3E1.1 allows the defendant to receive a two-level, see U.S.S.G. § 3E1.1(a), and in some cases a three-level, see U.S.S.G. § 3E1.1(b), decrease in offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."

As the district court noted, Application Note 4 to § 3E1.1 explains that "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1, comment. (n. 4). Note 4 explains that adjustments

11

under both provisions simultaneously occur only in "extraordinary cases." <u>Id.</u> We agree with the district court that "this is not such an extraordinary case." <u>See</u> Rec. vol. IV, at 234. Mr. Buck's own testimony at the sentencing hearing, during which he repeatedly accused several witnesses of lying, <u>see, e.g.</u>, Rec. vol. IV, at 165-66, 168, and denied admissions that he had previously made in the plea agreement, <u>id.</u> at 160-65, indicates that he had not at the time of sentencing accepted responsibility for his offenses.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court.

Entered for by the Court,

ROBERT HENRY
United States Circuit Judge