**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gary D. MARTIN, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert E. REED, Defendant–Appellant.**

Nos. 92–1334, 92–1368.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1992.

Decided Jan. 7, 1993.

Rehearing and Rehearing En Banc Denied in No. 92–1368 Feb. 25, 1993.

Steven R. Nesson, Sioux Falls, SD, argued, for defendant-appellant Gary Martin.

Drake A. Titze, Sioux Falls, SD, argued, for defendant-appellant Robert Reed.

Michelle G. Tapken, Asst. U.S. Atty., Sioux Falls, SD, argued (Thomas J. Wright and Ted L. McBride, Asst. U.S. Attys., on brief), for plaintiff-appellee U.S.

Before BOWMAN, LOKEN, Circuit Judges, and LARSON,* Senior District Judge.

LOKEN, Circuit Judge.

Robert E. Reed and Gary D. Martin appeal their drug and weapon convictions after a joint trial. Reed argues that the district court[1] erred in denying his motion

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The HONORABLE JOHN B. JONES, Chief Judge of the United States District Court for the District of South Dakota.

to suppress a handgun discovered during a warrantless search of his person. Martin argues that the district court should have suppressed crack cocaine discovered during a warrantless search of his vehicle. We affirm.

## I.

At 1:00 a.m. on July 26, 1991, Officers Steve Haney and Tim Hagen of the Sioux Falls Police Department, on routine patrol, pulled into an alley and saw defendants Reed and Martin standing between two cars in an otherwise empty portion of the Sportsman's Bar parking lot. They were talking to the two occupants of a 1980 Honda Civic. When Reed and Martin saw the patrol car, they ducked behind the second car, a 1981 Oldsmobile, then rose together and rapidly walked towards the bar.

After calling for backup, the uniformed officers got out of their patrol car. Officer Haney followed Reed and Martin. At his request, they stopped, identified themselves, and said they had been talking to friends in the Honda but could not remember the names of the friends. As Haney began a pat-down search of Reed, Reed admitted that he was carrying a gun. Haney removed the loaded handgun from Reed's pocket and handed it to Officer David Blades, who by then had arrived on the scene. Reed told the officers that he had a permit for the weapon. When they were unable to verify that by radio, Reed was arrested for carrying a concealed weapon and placed in the squad car.

Meanwhile, Officer Terry Persing had conducted a pat-down search of Martin and found nothing. Martin asked Persing if he could make a phone call in the bar. Persing acquiesced after obtaining Martin's home address and his promise to return when he completed the call. Some time later, after Martin had failed to return, Officers Persing and Blades turned their attention to the Oldsmobile. After noting a temporary license on the back identifying Martin as its owner, the officers looked in the car and observed a stereo radio behind the driver's seat, a cellular phone on the front seat, and a small cellophane package

on the front passenger seat. Officer Persing opened the car door and showed the package to Officer Blades; they concluded that it contained crack cocaine, as police lab tests later confirmed. Persing then looked in the unlocked glove compartment and found a plastic bag containing approximately twenty-five packets of crack cocaine. The Oldsmobile was impounded and towed away between 1:30 and 2:00 a.m. Martin did not return and was not found at the home address he had given. He was subsequently arrested on other charges in Sioux City, Iowa.

After the crack cocaine was discovered in the Oldsmobile, Claude Allen, one of the occupants of the Honda, admitted that he had bought crack cocaine that night from the defendants. Allen led the officers to a third package that he had discarded when they first arrived and later testified for the prosecution at defendants' trial.

Prior to trial, Reed and Martin filed separate motions to suppress, which the district court denied after evidentiary hearings. Reed and Martin were convicted of three drug counts and were each sentenced to fifty-one months in prison on those counts. Reed was also convicted of possessing a firearm during a drug offense and received an additional sixty month consecutive sentence on that count. On appeal, Reed challenges the denial of his motion to suppress the handgun, and Martin challenges the denial of his motion to suppress the crack cocaine found in his Oldsmobile.

## II.

Reed argues that Officer Haney had no reasonable, articulable suspicion that criminal activity may be afoot when he stopped Reed and conducted a pat-down search. Therefore, the gun was found during an invalid search, and the district court erred in denying his motion to suppress. *See Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). However, this argument ignores the district court's express finding "that Mr. Reed consented to the search of his person and that the gun in question was found in the course of that search." A search conduct-

ed pursuant to a valid consent is constitutionally permissible. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). We review the district court's finding of consent under the clearly erroneous standard. *See United States v. McKines*, 933 F.2d 1412, 1425 (8th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991).

■ Both Reed and Haney testified at the suppression hearing. Their undisputed testimony established that Reed and Martin began walking toward the Sportsman's Bar when they saw the police car approach; that they turned and went back to Officer Haney when he called to them; and that they answered Haney's request for identification. Reed's testimony as to Haney's subsequent pat-down search was as follows:

On direct examination:

Q And when you asked him why he wanted to search you, what did he say?

A He said it's routine.

Q Did you have any response to that?

A Well, so I say, "Yes." You know, just gonna' let him. You know, he asked me did I have anything on me that he should know about before he searched me and I said the only thing I had was my gun.

On cross examination:

Q Okay. Now, isn't it true that Officer Haney asked you if he could search you?

A Yes, he did.

Q What did you say?

A I asked him why he wanted to search me.

Q You asked him why?

A Yes.

Q And what did he say?

A He said, "It's routine."

Q Just tell me what happened then.

A And so I went on and let him search me.

Q Pardon?

A He asked me and I told him. He asked me did I have anything on me that he should know about and.... I said, "Well, I have my gun." And so

he had me put my hands on the car. He àsked me where it was at. I told him it was in my pocket. So he kept patting me and he said, "Where?" I say, "In my pocket."

\*   \*   \*   \*   \*   \*

Q Did you object in any way to him searching you?

A No, I didn't.

On this record, the district's court's finding of a consensual search was not clearly erroneous. *Compare United States v. Washington*, 957 F.2d 559, 562 (8th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 239, 121 L.Ed.2d 174 (1992); *United States v. Galvan*, 953 F.2d 1098, 1101–02 (8th Cir. 1992).

## III.

■ Martin argues that the district court erred in denying his motion to suppress because the crack cocaine was discovered during an invalid inventory search conducted when his car was not in lawful police custody. The overriding Fourth Amendment issue is whether the search of Martin's Oldsmobile was unreasonable under all the facts and circumstances, an issue that we review de novo. *See United States v. Stephenson*, 924 F.2d 753, 758 (8th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 321, 116 L.Ed.2d 262 (1991).

When Officers Persing and Blades decided to examine the interior of the Oldsmobile, they had no evidence that a drug transaction had occurred. Reed had been arrested for carrying a concealed weapon, and it was likely that he had been a passenger in the Oldsmobile earlier that night. Martin, identified as the vehicle's owner on the temporary license, had consented to a search of his person; he had then been given permission to go in the bar to make a call and had not returned for some fifteen minutes.

Officer Blades testified that they began their examination by looking through the car's open windows with their flashlights. Blades stated that the cellophane package, as well as a stereo radio and a cellular phone, were in plain view from outside the

car. Officer Persing testified that he had already decided to impound the car incident to Reed's arrest and did not see the cellophane package until he opened the car door to make a preliminary inventory of its interior. After he examined the suspicious package and concluded that it contained crack cocaine, he opened the unlocked glove compartment and found the large plastic bag containing twenty-five pieces of individually wrapped crack cocaine.

In *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the Supreme Court held that the Fourth Amendment is not violated when police impound and conduct an inventory search of an illegally parked vehicle. The Court explained that, in many situations, impounding reasonably serves the interests of public safety and "community caretaking functions," and that an inventory search is reasonable to protect the owner's property while the car is in custody and to protect the police from disputes over lost or stolen property. *Id.* at 368–369, 96 S.Ct. at 3097. The government argues that Officer Persing conducted a valid inventory search under *Opperman*. Martin argues that *Opperman* is inapplicable because his car was parked in a private lot and therefore could not be lawfully impounded. We conclude that Persing's preliminary examination of the car's interior, where he found the package of crack cocaine in plain view, was reasonable.

Martin's argument ignores Officer Persing's testimony that he had decided to impound the Oldsmobile incident to Reed's arrest. Persing explained that Sioux Falls Police Department policy mandated that, "[w]hen someone is arrested and it's in conjunction with a vehicle, if the vehicle cannot be left in the custody of someone who will claim liability for it, then it will be towed." Police may take protective custody of a vehicle when they have arrested its occupants, *see Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), even if it is lawfully parked and poses no public safety hazard. *See United States v. Staller*, 616 F.2d 1284, 1289–90

(5th Cir.), *cert. denied*, 449 U.S. 869, 101 S.Ct. 207, 66 L.Ed.2d 89 (1980).

Here, of course, the person arrested, Reed, was not the apparent owner of the Oldsmobile. Martin, however, had left the scene for a suspicious length of time despite his promise to return, making it likely that no one would claim custody of the unlocked vehicle, which had valuable equipment inside in plain view. Thus, it was not unreasonable for Persing and Blades to make a routine, preliminary examination of the car's interior in preparation for impounding the car if Martin failed to return. *See United States v. Kornegay*, 885 F.2d 713, 716 (10th Cir.1989), *cert. denied*, 495 U.S. 935, 110 S.Ct. 2179, 109 L.Ed.2d 508 (1990).

■ Moreover, Martin's exclusive focus on the *Opperman* issue ignores Officer Blades's testimony that the suspicious cellophane package of crack cocaine was in plain view when he looked through the car's open windows. "There is no legitimate expectation of privacy shielding that portion of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *Texas v. Brown*, 460 U.S. 730, 740, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502 (1983). Thus, even if Officer Persing's inventory inspection was premature, the contraband was in plain view to Officer Blades from outside the car, so that seizure by him was inevitable and constitutionally permissible. "Exclusion of physical evidence that would inevitably have been discovered adds nothing to either the integrity or fairness of a criminal trial." *Nix v. Williams*, 467 U.S. 431, 446, 104 S.Ct. 2501, 2510, 81 L.Ed.2d 377 (1984).

■ Taking all these circumstances into account, and considering the admonition that "the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office," *Opperman*, 428 U.S. at 367, 96 S.Ct. at 3096, we conclude that the district court properly denied Martin's motion to suppress.[2]

---

**2.** Our conclusion that the motion to suppress     was properly denied is based in part upon the

■ Martin also argues that discrepancies between Officer Persing's testimony at the suppression hearing and at trial established that the inventory search was in fact a pretext for an unconstitutional search to uncover evidence of a crime. At the suppression hearing, Persing testified that the car was searched only after he had looked for Martin in the bar to release the car to him. At trial, both Blades and Persing testified that the car was searched first and then they went in the bar to look for Martin to arrest him. This issue was not properly preserved for appeal.

■ Generally, the overruling of a pretrial motion to suppress makes it unnecessary to object when the evidence is offered at trial. However, "the rule is one of practice and is not without exceptions." *Lawn v. United States*, 355 U.S. 339, 353, 78 S.Ct. 311, 320, 2 L.Ed.2d 321 (1958).[3] In this case, the prosecution marked the crack cocaine for identification during Persing's direct examination. Persing was then vigorously cross examined about the discrepancies between his trial and suppression hearing testimony. The government offered the cocaine into evidence later in the trial, after a Police Department chemist had identified it as crack cocaine. Neither Martin nor Reed objected to its admission. Therefore, Martin failed to preserve the issue of whether Persing's trial testimony warranted reconsideration of the district court's denial of his motion to suppress. In addition, after careful review of Persing's testimony at the suppression hearing and the testimony of Persing and Blades at trial, we conclude that the discrepancies upon which Martin relies did not undermine the district court's decision that the crack cocaine was constitutionally admissible.

The judgment of the district court is affirmed.

---

officers' subsequent testimony at trial. However, it is clear that, in reviewing the denial of a motion to suppress, we must examine the entire record, not merely the evidence adduced at the suppression hearing. *See Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925); *United States v. White*, 890 F.2d 1012, 1015 (8th Cir.1989), *cert. denied*, 497 U.S. 1010, 110 S.Ct. 3254, 111 L.Ed.2d 763 (1990); *Holloway v. Wolff*, 482 F.2d 110, 113 n. 2 (8th Cir.1973).

3. We have repeatedly cautioned that it is the better practice for defense counsel to object when the unsuppressed evidence is offered at trial. *See United States v. Layne*, 973 F.2d 1417, 1420 n. 4 (8th Cir.), *petition for cert. filed* (Nov. 18, 1992); *United States v. Criswell*, 696 F.2d 636, 637 n. 2 (8th Cir.1983).