# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 03-3376

———————

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | *   Appeal from the United States |
| v. | *   District Court for the Western |
| | *   District of Missouri. |
| Jacob A. Kanatzar, | * |
| | * |
| Appellant. | * |

———————

Submitted:  January 13, 2004

Filed: June 7, 2004

———————

Before WOLLMAN, RICHARD S. ARNOLD, MORRIS SHEPPARD ARNOLD,
Circuit Judges.

———————

MORRIS SHEPPARD ARNOLD, Circuit Judge.

After the district court[1] denied his motion to suppress evidence obtained during an inventory search of the vehicle that he was driving, Jacob Kanatzar conditionally pleaded guilty to being a felon in possession of a firearm, *see* 18 U.S.C. §§ 922(g)(1), 924(a)(2).  The district court sentenced Mr. Kanatzar to 90 months in prison, and he appeals the denial of his suppression motion and his sentence.  We affirm.

———————

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

I.

Mr. Kanatzar contends that his fourth amendment right to be free from unreasonable searches was violated when the police impounded a vehicle that he was driving and conducted an inventory search. We review the district court's factual findings for clear error and its conclusion that the police did not violate Mr. Kanatzar's fourth amendment rights *de novo*. *See United States v. Wells*, 347 F.3d 280, 286-87 (8th Cir. 2003).

The district court adopted the following factual findings of the magistrate judge. Two Kansas City, Missouri, police officers were on routine patrol in an unmarked police car when the driver of a Chevrolet Caprice (later identified as Mr. Kanatzar) made a double-lane change directly in front of their vehicle without signaling. After the Caprice turned onto a side street, the police stopped it. One of the officers, Jason Crump, approached Mr. Kanatzar, informed him of the traffic violation, and asked for a driver's license, which he was unable to produce. Officer Krump then asked Mr. Kanatzar to step out of the vehicle and placed him under arrest for an illegal lane change and failure to have his driver's license. Some time during this interaction, Mr. Kanatzar informed the officer that he lived in Wichita, Kansas. In the meantime, the other officer determined that the driving privileges of the vehicle's passenger had been suspended.

The police decided to impound the vehicle because Mr. Kanatzar was from out of state and was under arrest and going to jail where he would be required to post bond, the passenger did not have a valid driver's license, and the vehicle was parked in a "high crime area with a high incidence of auto thefts and break-ins." During an inventory search of the vehicle, the police uncovered three firearms, along with fake I.D.'s, printers, scanners, ski masks, and a large amount of cash.

The Kansas City Police Department's "general towing requirements" provide that "[v]ehicles shall be towed," *inter alia*, "when the owner/operator is not

considered to be a responsible person, is unable to operate the vehicle, and is unable to exercise any of [three] options": "[d]rive the vehicle to a police facility," "[r]elease the vehicle to a qualified driver," or "[s]ign an Authorization Not to Tow Vehicle ... allowing the arresting officer to leave the vehicle legally parked at the arrest scene." The police department guidelines also provide that an officer has "discretion" to decide whether to permit an arrested driver to leave his or her vehicle at the scene of an arrest, and that "[g]ood judgment will be used before a vehicle is allowed to remain parked at an arrest scene, [and] [c]onsideration will be given to [among other things] area crime rate." The district court concluded that the officers had complied with police department procedures and did not violate Mr. Kanatzar's fourth amendment rights by impounding the vehicle and making an inventory of its contents.

The police may impound vehicles "[i]n the interests of public safety and as part of what the Court has called 'community caretaking functions.' " *See South Dakota v. Opperman*, 428 U.S. 364, 368 (1976) (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). Officers are permitted to exercise their discretion in deciding whether to impound a vehicle, so long as that discretion is "exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Colorado v. Burdine*, 479 U.S. 367, 375 (1987).

In his brief, Mr. Kanatzar acknowledges that it was "within Officer Crump's discretion" to impound the Caprice or to leave it where it was parked. He contends, however, that the officers should not have based their decision on the fact that the car was parked in a high-crime area or that Mr. Kanatzar was from out of state. Although Mr. Kanatzar relies on a Seventh Circuit case to argue that the degree of crime in the area should not be considered when determining whether to impound a vehicle, *see United States v. Duguay*, 93 F.3d 346, 352-53 (7th Cir. 1996), we (as well as other circuit courts) have considered the likelihood of theft or vandalism when determining the reasonableness of an impoundment. *See e.g., United States v. Garner*, 181 F.3d 988, 992 (8th Cir. 1999), *cert. denied*, 528 U.S. 1119 (2000); *see also United States*

*v. Kornegay*, 885 F.2d 713, 716 (10th Cir.1989), *cert. denied*, 495 U.S. 935 (1990); *United States v. Staller*, 616 F.2d 1284, 1290 (5th Cir.1980), *cert. denied*, 449 U.S. 869 (1980). In addition, in *Bertine*, 479 U.S. at 376 n.7, the Supreme Court noted that a police directive prohibiting parking a vehicle (rather than impounding it) " 'where there is reasonable risk of damage or vandalism' ... protect[ed] the vehicle and its contents and minimize[d] claims of property loss."

Another appropriate police consideration here was the absence of anyone immediately available to drive the Caprice. *See United States v. Stephens*, 350 F.3d 778, 780 (8th Cir. 2003); *United States v. Martin*, 982 F.2d 1236, 1240 (8th Cir.1993). We have said that the "[p]olice may take protective custody of a vehicle when they have arrested its occupants," *id.*, and they may "take immediate possession and secure the vehicle" when the driver does not have a valid driver's license, *Stephens*, 350 F.3d at 780. Although Mr. Kanatzar's passenger was not arrested, she was unable to drive the car because her license had been suspended, and we believe, moreover, that the fact that Mr. Kanatzar was from Wichita made it less likely that the police could quickly locate someone else to take custody of the vehicle.

Mr. Kanatzar also argues in his brief that even though the police department "had a written policy directing a content inventory of all vehicles being towed, Officer Crump clearly had an investigative motive to search Mr. Kanatzar's vehicle" because he testified that "he believed Mr. Kanatzar was attempting to conceal his identity." We conclude, however, that after the decision was made to impound the vehicle, the law permitted an inventory search consistent with police procedures to protect Mr. Kanatzar's property and to protect the police against claims of lost or stolen property and from potential danger. *See Opperman*, 428 U.S. at 369; *see also United States v. Rowland*, 341 F.3d 774, 779 (8th Cir. 2003), *cert. denied*, 124 S. Ct. 969 (2003). Even if the officer had another motive, the "presence of an investigative motive does not invalidate an otherwise valid inventory search." *Garner*, 181 F.3d at 991-92.

-4-

We conclude that the police did not act unreasonably in deciding to impound the vehicle and in conducting an inventory search. For all of the reasons stated, we uphold the district court's denial of the motion to suppress.

## II.

Mr. Kanatzar also challenges the sentencing court's imposition of an enhancement under U.S.S.G. § 2K2.1(b)(5), which requires a four-level increase in a defendant's offense level if the defendant "used or possessed any firearm ... in connection with another felony offense." We review the court's findings of fact for clear error and its conclusions of law *de novo*. *See United States v. Mack*, 343 F.3d 929, 935-36 (8th Cir.2003), *cert. denied*, 124 S. Ct. (2004).

Here the sentencing court applied the four-level increase based on a connection between the firearms and the state felony of possessing a forging instrumentality, *see* Mo. Rev. Stat. § 570.100. Mr. Kanatzar did not object to the probation officer's statement in the presentence investigation report (PSR) that the police found in the trunk of the car that he was driving three loaded firearms, a computer scanner, a digital camera, spray adhesive, a counterfeit detector pen, several fraudulent driver's licenses, photographic paper, $4300 in currency, and two ski masks. According to the PSR, the defendant was "in possession of equipment used to manufacture counterfeit checks and other evidence indicating he was involved in fraudulent check passing activity." Although the defendant did not object to the underlying facts in the PSR, he challenges the sentencing court's finding that because "all the paraphernalia for crime was found together" he possessed a firearm "in connection with" the state felony.

We have said that "[i]n connection with means that the firearm must have some purpose or effect with respect to, and must facilitate, or have the potential of facilitating, another felony offense; its presence or involvement cannot be the result of accident or coincidence." *United States v. Fredrickson*, 195 F.3d 438, 439-40

(8th Cir.1999) (per curiam) (internal quotations omitted); *see also United States v. Regans*, 125 F.3d 685, 686 (8th Cir.1997), *cert. denied*, 523 U.S. 1065 (1998). But the government need not prove that the firearm was used in the commission of the felony, only that it was used or possessed in connection with it. *See United States v. Scolaro*, 299 F.3d 956, 957 (8th Cir.2002), *cert. denied*, 123 S. Ct. 1774 (2003).

Although we have stated that possessing a firearm contemporaneously with the commission of another felony requires a § 2K2.1(b)(5) enhancement "unless it is clearly improbable that the firearm was used in connection with that felony," *United States v. Marks*, 328 F.3d 1015, 1017 (8th Cir. 2003) (internal quotations omitted), we agree with Mr. Kanatzar that the "clearly improbable" standard is rightly limited to cases in which the other felony offense is drug related. In *Regans*, 125 F.3d at 687, we borrowed the "clearly improbable" language from the commentary to U.S.S.G. § 2D1.1(b)(1), a guideline that increases the offense level for drug-trafficking if the defendant possesses a dangerous weapon while committing the drug offense, *see* U.S.S.G. § 2D1.1(b)(1) & comment. (n. 3), and applied that standard (apparently for the first time) to determine the propriety of a § 2K2.1(b)(5) enhancement when the defendant is charged with possessing a gun. The defendant in *Regans* was found in possession of both a gun and heroin, *see* 125 F.3d at 685, and we stated that a "finding of the requisite connection in *this situation* is consistent with the purpose of § 2K2.1(b)(5) and cannot be clearly erroneous except, perhaps, in the exceptional circumstances recognized in Application Note 3 to § 2D1.1--if 'it is clearly improbable that the weapon was connected with the offense,' " 125 F.3d at 687 (emphasis added).

Since *Regans*, we have frequently quoted the "clearly improbable" standard when applying § 2K2.1(b)(5), *see, e.g., United States v. Linson*, 276 F.3d 1017, 1018 (8th Cir. 2002), but *Marks*, 328 F.3d at 1017, is the only case that we have located in which the other felony offense was not drug related. In *Marks*, the defendant's other "felony offense," § 2K2.1(b)(5), was resisting arrest, but the "fighting issue" was not

whether the firearm was used or possessed in connection with that offense, but rather whether that offense was a felony at all, 328 F.3d at 1017. We affirmed the four-level increase in *Marks* based on evidence that the defendant's crime was a felony because while fleeing from officers he displayed a pistol. *See id.* at 1018. Because the defendant in *Marks* plainly used a firearm in connection with resisting arrest, our holding did not require us to decide whether the "clearly improbable" language applied. Therefore we do not believe that our reference in that case to that language compels us to apply it here.

Although an unpublished case is not precedent, *see* 8th Cir. R. 28A(i), we agree with our decision in *United States v. Williams*, No. 02-3477, 2003 WL 22427921 (8th Cir. Oct. 23, 2003) (per curiam). There we held that the sentencing court erred in applying the "clearly improbable" standard in the commentary to the drug trafficking guideline, § 2D1.1comment. (n.3), to interpret § 2K2.1(b)(5), because the other felony offense did not involve drugs. *See Williams*, WL 22427921, at **2; *cf. United States v. Routon*, 25 F.3d 815, 819 (9th Cir.1994). As we noted in *Williams,* the commentary to § 2D1.1 indicates that the enhancement for weapons possession reflects the increased risk of violence when drug traffickers possess weapons. *See* § 2D1.1 comment. (n.3). With respect to crimes that are not drug related, however, we hold that the sentencing court should simply determine whether the enhancement in § 2K2.1(b)(5) applies to the facts of the case without reference to the commentary to the drug-trafficking guideline. *Cf. Mack*, 343 F.3d at 935-36.

With the above holding in mind, we consider whether the sentencing court erred in finding that Mr. Kanatzar possessed the firearms in connection with the possession of the implements of forgery. Mr. Kanatzar argues that the physical proximity of the guns to the evidence of the forgery offense was not enough to establish the necessary connection between the two. He relies on the Fifth Circuit's decision in *United States v. Fadipe*, 43 F.3d 993, 994 (5th Cir. 1995), in which the defendant submitted a false credit application to a bank. In *Fadipe*, law enforcement

arranged a controlled delivery to the defendant of bank checks printed for his use, and he was arrested after he drove away from his apartment with the checks. *See id.* He had a loaded gun in the car's front passenger area, along with information that could be used in bank fraud schemes. *See id.* The court held that the physical proximity of the gun to the instruments of fraud was insufficient to support a finding that the gun was possessed "in connection with" the other felony offense of bank fraud. *See id.* at 994-95.

The court in *Fadipe* appeared to require a showing that the gun was used in connection with the commission of the crime before the enhancement applied, *see id.* at 995, but we do not read § 2K2.1(b)(5) as imposing such a requirement, *see Scolaro*, 299 F.3d at 957. As we have said, it is enough if the firearm "had some purpose or effect with respect to" and had "the potential of facilitating" the felony, *see Regans*, 125 F.3d at 686, and we believe that there was sufficient evidence to support that finding here. An ongoing counterfeiting operation is likely to present danger to the defendant, giving him reason to keep weapons near the tools of his trade, which, in turn, may embolden him to engage in the criminal activity. Here where the defendant had three loaded weapons, cash, and ski masks in close proximity to items used to facilitate counterfeiting, we do not believe that the sentencing court was required to find that the presence of the guns was coincidental. We thus conclude that the sentencing court did not err in finding that Mr. Kanatzar "used or possessed a firearm ... in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5).

III.

Under the sentencing guidelines, the base offense level of a defendant convicted of being a felon in possession of a firearm should be increased from 14 to 20 if he or she had been previously convicted of a crime of violence. U.S.S.G. § 2K2.1(a)(4)(A), (6). The sentencing court increased Mr. Kanatzar's base offense level to 20 because of his prior Kansas convictions for aggravated assault and battery. Mr. Kanatzar does not dispute that aggravated assault and battery are crimes of

violence, *see* U.S.S.G. § 4B1.2(a), but he argues that his base offense level should have been only 14 because by the time he committed the instant offense, the state of Kansas had restored his civil rights to him. We disagree.

According to the commentary to § 2K2.1(a)(4)(A), a "felony conviction" includes "a prior ... state conviction for an offense punishable by ... imprisonment for a term exceeding one year." U.S.S.G. § 2K2.1 comment. (n.5). The guidelines direct the court to determine the base offense level by considering the crimes used to calculate the defendant's criminal history score, *see* U.S.S.G. § 2K2.1 comment. (n.15), which may include convictions for which the defendant's civil rights have been restored, *see* U.S.S.G. § 4A1.2 comment. (n. 10). But, as Mr. Kanatzar notes, under 18 U.S.C. § 921(20), "what constitutes a conviction" of a "crime punishable by imprisonment for a term exceeding one year" is determined according to the law of the jurisdiction of the conviction, and "[a]ny conviction ... for which a person ... has had civil rights restored shall not be considered a conviction for purposes of [the chapter addressing firearms convictions and punishment], unless such ... restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." Mr. Kanatzar argues that his civil rights were restored following his Kansas convictions, and therefore under § 921(a)(20) they cannot be used to increase his base offense level. *See United States v. Palmer*, 183 F.3d 1014, 1017-18 (9th Cir.1999). We agree with Mr. Kanatzar that where a conflict exists a statute generally prevails over a guideline. *See United States v. Stoneking*, 60 F.3d 399, 402 (8th Cir. 1995) (en banc), *cert. denied*, 516 U.S. 1119 (1996). But even if we assume, without deciding, that § 921(a)(20) is applicable in these circumstances, we believe that Mr. Kanatzar cannot prevail.

According to the defendant's argument, all of his civil rights, including his right to possess firearms, were restored to him under Kansas law ten years after his March 1991 assault and battery convictions, and therefore those convictions should not have been used to increase his base offense level for the firearms violation that occurred

in January 2003. Following imprisonment for the Kansas convictions, Mr. Kanatzar was placed on parole in 1999 and discharged in February 2001. His "certificate of discharge" from the Kansas parole board ordered that his civil rights," including the right to vote, hold public office, and serve on a jury, be restored to him. But the certificate further provided that "[t]hese rights shall not include the right to own, possess, or use a firearm or other weapon as prohibited by K.S.A. [§] 21-4202 or K.S.A. [§] 21-4204."

Mr. Kanatzar contends that as of March 2001, ten years after the assault and battery convictions, his civil rights were fully restored to him by operation of § 21-4204, a statute referred to in his discharge. He relies on the subsection of that statute that describes the crime of "[c]riminal possession of a firearm" to include the following:

> possession of any firearm by a person who, within the preceding 10 years, has been convicted of ... [a] felony under K.S.A. ... 21-3410 [the aggravated assault statute] ... or a crime under a law of another jurisdiction which is substantially the same as such felony, has been released from imprisonment for such felony, or was adjudicated as a juvenile offender because of the commission of an act which if done by an adult would constitute commission of such felony, was found not to have been in possession of a firearm at the time of the commission of the offense, and has not had the conviction ... expunged or been pardoned."

Kan. Stat. Ann. § 21-4204(4).

We believe, however, that Mr. Kanatzar cannot benefit from this statute for several reasons. First, the subsection upon which he relies criminalizes the possession of a firearm by a person who "within the preceding 10 years ... has been released from imprisonment" for an aggravated assault conviction. *Cf. State v. Chiles*, 260 Kan. 75, 80, 917 P.2d 866, 870 (1996). Because Mr. Kanatzar was not released from prison until 1999, under this provision he would not be permitted to

possess a firearm until 2009. We note, moreover, that § 21-4204(4) applies only to individuals "found not to have been in possession of a firearm at the time of the commission of the [previous] offense." Here, however, there is no such finding in the record. In fact, the PSR reveals that the conduct supporting Mr. Kanatzar's state convictions very clearly involved possessing (and discharging) firearms, and Mr. Kanatzar did not object to that part of the PSR. Finally, we note that in Kansas those individuals found to have possessed a firearm during what is called a "person felony" such as aggravated assault, *see* Kan. Stat. Ann. § 21-3410, are prohibited from possessing a firearm for an unlimited time period. *See* Kan. Stat. Ann. § 21-4204(2). For all of the reasons stated, we believe that after his assault and battery convictions, Kansas never restored to Mr. Kanatzar his right to possess firearms, and thus his argument must fail.

## IV.

Accordingly, we affirm the judgment of the district court.

_____