**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 31, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

EDWARD PAUL WILSON,

    Defendant-Appellant.

No. 06-2047
(D. N.M.)
(D.C. No. CR-05-1441-JH)

_____

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **BARRETT,** and **BRORBY**, Senior Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1.9(G). The case is therefore ordered submitted without oral argument.

Appellant Edward Paul Wilson pled guilty to three counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2)

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

(counts one, two, and four); one count of transporting a stolen vehicle in interstate commerce in violation of 18 U.S.C. §§ 2(a) and 2312 (count three); four counts of fraud in connection with identification documents in violation of 18 U.S.C. §§ 2(a) and 1028(a)(3) (counts five through eight); one count of the use of document-making implements used in the production of false identification documents in violation of 18 U.S.C. §§ 2(a) and 1028(a)(5) (count nine); and one count of fraud in connection with an access device in violation of 18 U.S.C. §§ 2(a) and 1029(a)(3) (count ten). He now appeals his seventy-month sentence, contending a four-level increase to his offense level under United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") § 2K2.1(b)(5) should not apply because he did not possess firearms in connection with another felony offense. We exercise jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291 and affirm Mr. Wilson's convictions and sentences.

The criminal counts to which Mr. Wilson pled guilty occurred on different dates, including two incidents occurring on June 10, 2002, and September 22 and 23, 2002, resulting in guilty pleas to two counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The probation officer who prepared Mr. Wilson's presentence report did not rely on either of these two incidents or counts for the purpose of recommending the four-level offense increase under U.S.S.G. § 2K2.1(b)(5) for possession of a firearm in connection with another felony. Instead, the probation officer relied on a third

incident, which occurred between May 18 and May 28, 2003, resulting in counts three through ten, to which Mr. Wilson pled guilty, for the purpose of applying the four-level offense increase of which Mr. Wilson now complains. The relevant facts are as follows.

On or before May 21, 2003, Brandon Kerby paid Mr. Wilson $500 to drive a stolen Chevrolet Malibu from New Mexico to Colorado. Mr. Wilson and a companion, Adam Russell, arrived in Colorado in the stolen vehicle on May 21, 2003, and rented a room at a hotel in Greenwood Village, Colorado. On May 27, 2003, Mr. Kerby arrived at the hotel room. On May 28, 2003, Greenwood Village Police Officers investigated the report of a stolen black Jeep, which they located in the hotel parking lot, and made contact with the driver of that stolen vehicle: Adam Russell, who shared the hotel room with Mr. Wilson. In the same parking lot they also made contact with the other hotel roommate, Mr. Kerby, who was driving another stolen vehicle, a Chevrolet Tahoe. At that time, Mr. Russell possessed a loaded handgun, and the stolen Tahoe driven by Mr. Kerby contained two stolen pistols and a fanny pack containing a revolver. Parked fifty yards away from these vehicles was the stolen Chevrolet Malibu previously driven across state lines by Mr. Wilson.

Officers then made contact with Mr. Wilson in the hotel room and during their search discovered two handguns – a Taurus .45 caliber semi-automatic pistol and a Taurus 9mm semi-automatic pistol – on the floor between the two beds.

The room also contained several fraudulent New Mexico and Texas drivers' licenses; stolen credit cards, social security cards, Department of Energy identification cards, and New Mexico motor vehicle holograms; various computers, scanners, printers, and cameras; various laminating sheets, labels, photo and print paper; and other related computer equipment and software, all of which could be used in the production of fraudulent identification documents. Mr. Wilson later admitted in his plea agreement he knew the vehicle he drove across state lines was stolen and that he manufactured false identifications and documents for himself and others by using a computer and scanner, and by utilizing stolen credit cards, drivers' licenses, and other federal identification documents.

Based on the circumstances surrounding the May 2003 incident, authorities charged Mr. Wilson with one count of unlawfully transporting a stolen motor vehicle in interstate commerce in violation of 18 U.S.C. §§ 2(a) and 2312 (count three); being a felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (count four); four counts of fraud in connection with identification documents in violation of 18 U.S.C. §§ 2(a) and 1028(a)(3) (counts five through eight); one count of the use of document-making implements used in the production of false identification documents in violation of 18 U.S.C. §§ 2(a) and 1028(a)(5) (count nine); and one count of fraud in connection with an access device in violation of 18 U.S.C. §§ 2(a) and 1029(a)(3) (count ten).

Following Mr. Wilson's guilty plea, the probation officer prepared the presence report, calculating his base offense level at fourteen under U.S.S.G. § 2K2.1(a)(6), and applying the contested four-level upward adjustment based on the May 2003 incident, pursuant to Guidelines § 2K2.1(b)(5).[1] After applying various other offense level increases and factoring in a three-level reduction for acceptance of responsibility, the probation officer calculated Mr. Wilson's total offense level at twenty and his criminal history at Category VI, for a total Guidelines sentencing range of seventy to eighty-seven months imprisonment.

Mr. Wilson filed formal objections to the presence report, contending the four-point enhancement under § 2K2.1(b)(5) was "inappropriate" because he

---

[1] On appeal, the government contends the four-level § 2K2.1(b)(5) increase could also apply to counts one and two, involving the June 10, 2002, and September 22 and 23, 2002 offenses, because Mr. Wilson possessed firearms during those offenses in connection with stealing a vehicle, pointing a gun at another driver, and possessing methamphetamine or materials used in the production of methamphetamine. Mr. Wilson contests the use of these incidents, explaining: 1) he pled guilty to the firearms charges only and not to "the other felony," including the alleged stealing of a vehicle, pointing a gun at an unidentified individual, or possessing drugs; 2) the facts in the presentence report concerning those incidents were "uncharged, unproven," and "non-admitted" conduct; 3) the information for these offenses was based solely on three-year-old offenses described in police reports which contained hearsay and opinion; 4) no field test was conducted on the alleged illegal substances found; 5) he made no admissions concerning the facts cited and, to the extent he did, was never advised of his rights or provided with any type of adversarial proceeding; and 6) the search of his trunk, where certain alleged illegal items were found, was unconstitutional. Because we can resolve the § 2K2.1(b)(5) issue based on the May 2003 offenses alone, as did the probation officer and the district court, we need not address the June or September 2002 offenses or the parties' related contentions.

did not use or possess a firearm "in connection with" another felony; instead, he claimed his felonies were all fraud-related, "secret, [and] outside the public eye," and therefore the firearms were irrelevant to the commission of the fraud offenses. In response, the probation officer noted it was reasonably foreseeable Mr. Wilson possessed the firearms in connection with the May 2003 felony fraud offenses, given the firearms were found in his hotel room along with items used in producing fraudulent documents, and, in addition, he was convicted of interstate transportation of a stolen vehicle, which is also a felony offense.

At the sentencing hearing, Mr. Wilson's attorney continued to argue Mr. Wilson's possession of the firearms in the hotel room did not "facilitate" the fraud offenses; the "firearms were moneymakers to him, not ... instrumentalities of violent crime"; and "the guidelines, without the four-level enhancement, are more than sufficient, whether it's the low end or the high end, to penalize ... [his] conduct ...." After considering the parties' arguments and other submissions, the district court found the four-level enhancement applicable and sentenced Mr. Wilson at the low end of the Guidelines range to seventy months imprisonment. In applying the four-level enhancement under § 2K2.1(b)(5), the district court stated it took into consideration the advisory Guidelines and the factors set forth in 18 U.S.C. § 3553(a)(1)-(7) and found the government's arguments persuasive and the sentence reasonable.

On appeal, Mr. Wilson continues to argue the four-level enhancement under § 2K2.1(b)(5) should not apply absent a showing the weapons facilitated, or had the potential to facilitate, the commission of the fraudulent acts. Rather than being possessed "in connection with" these felony offenses, Mr. Wilson suggests the firearms were merely in proximity to instruments of fraudulent activity or "coincidental or entirely unrelated to the offense." In support, he relies almost exclusively on two Fifth Circuit cases, *United States v. Houston*, 364 F.3d 243 (5th Cir. 2004), and *United States v. Fadipe*, 43 F.3d 993 (5th Cir. 1995), in which the same Guidelines section was not applied.

While we recognize the Guidelines are now advisory rather than mandatory under the principles announced in *United States v. Booker*[2], they continue to be a factor the district court must consider in imposing a sentence. *See United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006) (*per curiam*). Since *Booker*, we review for reasonableness the ultimate sentence imposed. *Id.* We require reasonableness in two respects – "the length of the sentence, as well as the *method* by which the sentence was calculated." *Id.* at 1055. If the district court "properly considers the relevant Guidelines range and sentences the defendant within that range, the sentence is presumptively reasonable," but "[t]he defendant may rebut this presumption by demonstrating that the sentence is unreasonable in light of the other sentencing factors laid out in § 3553(a)." *Id.* In determining

_____

[2] 543 U.S. 220 (2005).

whether the district court properly considered the applicable Guidelines, we review its legal conclusions de novo and its factual findings for clear error. *Id.* at 1054.

Guidelines § 2K2.1(b)(5) recommends a four-level increase "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense ...." U.S.S.G. § 2K2.1(b)(5). This court has recognized that "[e]xcept for its plain language, § 2K2.1(b)(5) provides little guidance regarding the nexus required between firearm possession and the felony offense." *United States v. Brown*, 314 F.3d 1216, 1222 (10th Cir. 2003). We have noted the phrase "in connection with" in § 2K2.1(b)(5) "is analogous to the 'in relation to' requirement of 18 U.S.C. § 924(c)(1), which 'is satisfied if the government shows that the weapon facilitates or has the potential to facilitate the ... offense, but is not satisfied if the weapon's possession is coincidental or entirely unrelated to the offense." *United States v. Walters*, 269 F.3d 1207, 1219 (10th Cir. 2001) (quoting *United States v. Gomez-Arrellano*, 5 F.3d 464, 466-67 (10th Cir. 1993)). We have further acknowledged cases interpreting § 924(c) do not control the interpretation of § 2K2.1(b)(5) but have nevertheless concluded that "if the weapon facilitated or had the potential to facilitate the underlying felony, then enhancement under § 2K2.1(b)(5) is appropriate," and, likewise, an enhancement under § 2K2.1(b)(5) is inappropriate if "possession of the weapon is coincidental or entirely unrelated to the offense." *Brown*, 314 F.3d at 1222; *see also United*

*States v. Taylor*, 413 F.3d 1146, 1154 (10th Cir. 2005).[3]

The Eighth Circuit applied the "potential to facilitate" criteria in a case similar to the instant one, where the defendant was found with three loaded firearms, together with a computer scanner, digital camera, spray adhesive, counterfeit detector pen, several fraudulent drivers' licenses, photographic paper, $4,300 in currency, and two ski masks. *See United States v. Kanatzar*, 370 F.3d 810, 814 (8th Cir. 2004), *cert. granted, judgment vacated*, 543 U.S. 1107 (U.S. Jan. 24, 2005) (No. 04-6088). The court held firearms have the potential to facilitate an ongoing counterfeiting operation which is "likely to present danger to the defendant, giving him reason to keep weapons near the tools of his trade, which, in turn, may embolden him to engage in the criminal activity." *Id.* at 816. In another case, *United States v. Burke*, the Sixth Circuit did not expound on the meaning of the "in connection with" criteria in § 2K2.1(b)(5), but held it was met where a defendant's guns were found in a cabinet in his house containing detached vehicle identification numbers (VIN) and other VIN-flipping evidence, and his house was located across the driveway from his auto shop, where he was

---

[3] We note that at least one circuit does not restrict the application of § 2K2.1(b)(5) to our "facilitate" or "potential to facilitate" standard, but uses a more expansive application of "in connection with," so that "in certain circumstances, mere possession of a firearm can be enough to apply a sentencing enhancement." *United States v. Jackson*, 276 F.3d 1231, 1234 (11th Cir. 2001) (relying on *United States v. Matos-Rodriguez*, 188 F.3d 1300, 1308 (11th Cir. 1999)). *See also United States v. Rhind*, 289 F.3d 690, 695 (11th Cir. 2002) (determining a firearm does not have to facilitate the underlying offense to apply § 2K2.1(b)(5)).

conducting an illegal VIN-flipping operation. 345 F.3d 416, 427-28 (6th Cir. 2003). In explaining its holding, the Sixth Circuit acknowledged that, unlike drugs, "there is no widely acknowledged consensus that VIN-flipping is a dangerous activity that frequently involves guns," but:

> [n]evertheless, the guns and the VIN paraphernalia were found in close proximity, the illegal operation could have been protected by guns (*e.g.*, to fend off disgruntled car buyers, to deter thieves, and to defend the operation from the police), and overall there was sufficient evidence for the district court reasonably to conclude that the guns and the operation were connected.

*Id.* at 428. The logic applied by these circuits squares with our analysis of a defendant's possession of firearms to protect himself and the money derived while operating an illegal gambling enterprise, in which we determined the guns facilitated or had the potential to facilitate his illegal gambling operation. *See United States v. Buck*, 86 F.3d 1167, 1996 WL 276179, at *5 (10th Cir. May 24, 1996) (unpublished op.). While an unpublished order and judgment of this court is not binding precedent, we believe *Buck* has persuasive value and, like the other two circuits' cases, aids in our disposition of the issues presented.

In this case, Mr. Wilson admitted he used computers and scanners, as well as the other items found in the hotel room, to produce fraudulent identification documents, thereby admitting to their use as tools of his illegal trade or operation. The sheer volume of fraudulent-identification-producing tools or inventory in the room also indicates Mr. Wilson and his companions were using the hotel room to

house their illegal identification operation and were in fact operating an ongoing, illegal, commercial-like venture, much like the illegal gambling operation in *Buck*, the VIN-flipping operation in *Burke*, and the counterfeit operation in *Kanatzar*. The fact the guns and the tools of the fraudulent identification operation were found in close proximity clearly suggests the guns had the potential of facilitating the offenses committed; *i.e.*, protecting the tools used and the false identifications produced from the contingency of theft or other danger. Furthermore, the guns likely emboldened Mr. Wilson to continue his illegal activity knowing he possessed the weapons as "a means of protection or intimidation." *Smith v. United States*, 508 U.S. 223, 238 (1993).

Under the circumstances presented, it appears the guns were an integral part of the offenses committed and not merely placed in the hotel room by coincidence or happenstance or for reasons unrelated to the offenses committed. *Id*. This determination is bolstered by the fact the other defendants involved in the same fraudulent identification operation also possessed guns in the parking lot outside the same hotel room. Consequently, we believe sufficient evidence existed for the district court to reasonably conclude the guns and the tools of the fraudulent identification operation found in the hotel room were connected for the purpose of applying the four-level enhancement under § 2K2.1(b)(5).

As to the Fifth Circuit cases on which Mr. Wilson relies, we find them distinguishable. First, in *Houston*, two firearms were found in the defendant's

-11-

hotel room, together with a handbook on forging documents, a computer, and a small amount of marijuana. 364 F.3d at 244-45. The court first concluded the small amount of marijuana found in the room did not constitute a felony for the purpose of applying § 2K2.1(b)(5). *Id.* at 249. Without discussing the computer or handbook, the court next concluded the defendant's possession of a false social security card and identification card, which he used to falsely identify himself to police, might constitute a felonious forgery under state law, but that nothing in the record indicated the firearms were actually "possessed 'in connection with' the forgery." *Id.* at 244-45, 249-50. Unlike the defendant in *Houston*, Mr. Wilson possessed more than two forms of illegal identification together with firearms; instead, he was found in possession of a bounty of stolen and fraudulent identification documents together with tools he admitted using to produce the false identifications found in the room, leaving the district court to reasonably conclude the guns were used to facilitate the illegal identification operation, whether for protection, intimidation, or other purposes.

Similarly, the other case relied on by Mr. Wilson, *United States v. Fadipe*, is also distinguishable. *See* 43 F.3d 993. In that case, the defendant submitted to a bank a credit application which contained false information, and, at the bank's request, authorities conducted a controlled delivery by placing a book of checks in his apartment mail box. *Id.* at 994. Police arrested the defendant as soon as he retrieved the checks and drove out of his apartment complex; during the arrest,

-12-

they found not only the book of checks in his vehicle, but a loaded gun in the front passenger seat and numerous bank loan applications, personal and financial history records of different individuals, and "other materials" which could be used in bank fraud schemes. *Id.* The court concluded "[t]he undisputed facts show no connection between the gun and [the defendant's] bank fraud crime other than that the gun was present in [his] automobile, along with other tools of [his] bank fraud trade, when the checks were retrieved." *Id.* In other words, the court held nothing showed the gun facilitated the defendant's earlier submission of the fraudulent bank application and his subsequent retrieval of the book of checks from his mail box, at which time the crime or offense was complete; instead, the book of checks was found later in the same vehicle with the gun and other fraud-related materials.

Unlike the defendant in *Fadipe*, Mr. Wilson was found together with the guns in close proximity to the stolen identification documents and numerous tools he admitted to using in producing fraudulent identifications in an ongoing illegal operation. These scenarios are sufficiently different for us to conclude the district court reasonably applied § 2K2.1(b)(5) in this case.[4] Moreover, we agree with the

---

[4] Having determined the district court did not err in applying § 2K2.1(b)(5), we need not address the government's alternative suggestion that the guns found in the hotel room facilitated Mr. Wilson's transportation of the stolen vehicle found in the hotel parking lot, other than to note an issue exists as to whether the guns facilitated or had the potential to facilitate Mr. Wilson's transportation of the stolen vehicle, which occurred days before the guns were

(continued...)

Eighth Circuit's assessment that the court in *Fadipe* "appeared to require a showing that the gun was *used* in connection with the commission of the crime before the enhancement applied," rather than that it had "the potential of facilitating" the felony. *Kanatzar*, 370 F.3d at 816 (emphasis added, quotation marks and citation omitted).

Finally, given the district court "properly consider[ed] the relevant Guidelines range and sentence[d] the defendant within that range, the sentence is presumptively reasonable," and it is up to Mr. Wilson to "rebut this presumption by demonstrating that [his] sentence is unreasonable in light of the other sentencing factors laid out in § 3553(a)." *Kristl*, 437 F.3d at 1055. Under the circumstances presented and the applicable law, it was not unreasonable for the district court to determine a sentence imposed at the bottom of the applicable Guidelines range sufficiently reflected the factors in § 3553, and Mr. Wilson has not otherwise demonstrated his sentence is unreasonable.

For these reasons, we **AFFIRM** Mr. Wilson's convictions and sentences.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

---

[4](...continued)
found in his hotel room.

-14-