[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 25, 2010
JOHN LEY
CLERK

No. 08-16777

_____

D.C. Docket No. 07-00502-CR-4-SLB-TMP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BENJAMIN FRANKLIN JONES, JR.,
a.k.a. Benji Jones,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(February 25, 2010)

Before BLACK, MARCUS and HIGGINBOTHAM,* Circuit Judges.

_____

* Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth Circuit, sitting by designation.

PER CURIAM:

Benjamin Franklin Jones, Jr., pled guilty to counterfeiting[1] and was convicted after a bench trial of being a felon-in-possession of a firearm.[2] The district court sentenced him to sixty-three months' imprisonment and Jones now appeals.

In March 2006, Drug Task Force agents, on learning that Jones might be producing counterfeit currency at his home, obtained consent to search his bedroom and discovered a sheet of paper with counterfeit currency images printed on one side. They also found a loaded revolver in his dresser. During two subsequent searches of Jones's home the officers seized counterfeit bills in the face amount of $1,130 and computer equipment. Evidence at trial suggested Jones printed the counterfeit bills with the intention of passing them off to inattentive drug dealers. Ten months later, in January 2007, the hapless Jones was arrested for an unrelated burglary. Officers again searched his home, discovering a semi-automatic rifle and two loaded rifle magazines in a barn where Jones was then sleeping. Jones pled guilty to counterfeiting and was convicted at a bench trial for possession of the pistol.

At sentencing the district court adopted the presentence investigation report. The court first grouped the charges for counterfeiting and possession of the revolver

---

[1] 18 U.S.C. § 471.

[2] 18 U.S.C. § 922(g)(1).

2

together under section 3D1.2(c) of the Sentencing Guidelines. The court assigned a base offense level of twenty, based on section 2K2.1(a)(4)(B)(i), treating the illegal possession of the rifle—seized in the search of the barn—as relevant conduct to the offenses. Jones also received a four-level enhancement pursuant to section 2K2.1(b)(6) as the court found the possession of the revolver—seized in the search of Jones's room—was in connection with the counterfeiting felony offense. Jones objected both to the use of the possession of the rifle as relevant conduct and to the determination that the revolver was in connection with the counterfeiting. The district court sentenced Jones to sixty-three months' imprisonment on each count, to run concurrently.

I

Jones first contests the use of the rifle as relevant conduct in calculating his base offense level We review "the district court's interpretation of the Sentencing Guidelines de novo and accept its factual findings unless clearly erroneous."[3] The court reviews for clear error "the district court's factual findings regarding whether two [offenses] at issue in this sentencing involved the same course of conduct."[4] "For

---

[3] *United States v. Barner*, 572 F.3d 1239 (11th Cir. 2009).

[4] *United States v. Blanc*, 146 F.3d 847, 851 (11th Cir. 1998). Uncharged conduct may constitute relevant conduct. *See United States v. Valladares*, 544 F.3d 1257, 1269 (11th Cir. 2008).

a factual finding to be clearly erroneous . . . [we] must be left with a definite and firm conviction that a mistake has been committed."[5]

A district court must begin the sentencing process "by correctly calculating the applicable guideline range."[6] When determining a base offense level, the district court must consider "relevant conduct," which includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction."[7] We have implicitly held that possession constitutes conduct within the meaning of section 1B1.3(a)(2)[8]—a conclusion that does not turn on whether the possession is actual or constructive.[9]

Offenses "qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of

---

[5] *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004) (quotations omitted).

[6] *Gall v. United States*, 552 U.S. 38, 49 (2007).

[7] U.S.S.G. § 1B1.3(a)(2).

[8] *United States v. Pringle*, 350 F.3d 1172, 1175-76 (11th Cir. 2003) (finding a co-conspirator's possession of a firearm constituted "acts and omissions" "in furtherance of the jointly undertaken criminal activity" under section 1B1.3(a)(1)(B) and referring to "relevant conduct [i.e. possession of a firearm]"); *see also United States v. Phillips*, 516 F.3d 479, 484-85 (6th Cir. 2008) (illegal possession of firearms to be relevant conduct under section 1B1.3(a)(2)); *United States v. Brummett*, 355 F.3d 343, 344-45 (5th Cir. 2003) (possession of guns relevant conduct to felon-in-possession charge) (per curiam); *United States v. Powell*, 50 F.3d 94, 104 (1st Cir. 1995) (possession of firearms relevant conduct under section 1B1.3(a)(2)).

[9] *Cf. United States v. Greer*, 440 F.3d 1267, 1271 (11th Cir. 2006) (recognizing that 18 U.S.C. § 922(g)(1) treats actual and constructive possession the same).

a single episode, spree, or ongoing series of offenses."[10] Relevant factors in making this determination include the "distinctive similarities between the offense of conviction and the remote conduct that signal that they are part of a single course of conduct rather than isolated unrelated events that happen only to be similar in kind," as well as the regularity and temporal proximity between the two offenses.[11] Here the offense of conviction—possession of the revolver—and the relevant conduct—possession of the rifle—were both felon-in-possession offenses, occurring only ten months apart[12] and where the defendant slept at the relevant time. Though the firearms were different types of weapons and were originally charged as separate offenses, we do not find the district court clearly erred in applying the enhancement.

II

---

[10] U.S.S.G. § 1B1.3, cmt. n.9(B).

[11] *United States v. Maxwell*, 34 F.3d 1006, 1011 (11th Cir. 1994) (quotations omitted).

[12] *See Phillips*, 516 F.3d at 483-84 (stating courts "have not set forth any bright line rule regarding the temporal scope of 'relevant conduct,' but have generally upheld the relevant conduct designation where the offenses were within a nine-month period" and finding possession of firearms within a twenty-one and twenty-two months to be relevant conduct to the underlying possession charge); *United States v. Barbour*, 191 F. App'x 471 (7th Cir. 2006) (finding ten month gap insufficient to prevent a finding of relevant conduct). We also note that Jones admitted that he purchased the rifle in 1991, which suggests he possessed it at the same time he possessed the revolver.

Jones also challenges the district court's enhancement on the grounds that the possession of the revolver was "in connection with" the counterfeiting offense. Under section 2K2.1(b)(6) "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense" the offense level is increased by four. Again we review "the district court's interpretation of the Sentencing Guidelines de novo and accept its factual findings unless clearly erroneous."[13]

Subsection (b)(6) "appl[ies] if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense."[14] In *United States v. Rhind* the defendants were convicted of passing counterfeit currency and were driving a stolen vehicle containing unloaded weapons.[15] The court stated "the mere availability and appearance of the firearms could have served to promote the defendants' prolonged criminal episode.[16] Jones conceded at sentencing he possessed the revolver for years

---

[13] *United States v. Barner*, 572 F.3d 1239, 1247 (11th Cir. 2009).

[14] U.S.S.G. § 2K2.1, cmt., n.14(A).

[15] 289 F.3d 690, 695 (11th Cir. 2002).

[16] *Id.*; *see also United States v. Kanatzar*, 370 F.3d 810, 816 (8th Cir. 2004), *reversed on other grounds by Kanatzar v. United States*, 543 U.S. 1107 (2005), ("An ongoing counterfeiting operation is likely to present danger to the defendant, giving him reason to keep weapons near the tools of his trade, which, in turn, may embolden him to engage in the criminal activity. Here where the defendant had three loaded weapons, cash, and ski masks in close proximity to items used to facilitate counterfeiting, we do not believe that the sentencing court was required to find that the presence of the guns was coincidental."); *Matos-Rodriguez*, 188 F.3d 1300, 1309 (11th Cir. 1999) (stating "it is reasonable to conclude here that Matos possessed the pistol to prevent theft during a close, face-to-face, hand-to-hand encounter with a person he apparently did not know well").

and years, supporting the district court's finding that he possessed it in his bedroom during the time he was manufacturing counterfeit bills there. While it does not appear he carried it with him while passing off the bills, because the firearm could have protected the counterfeit bills from theft or been used to protect Jones from angry victims it facilitated or had the potential of facilitating the counterfeiting offense. Therefore, while recognizing the factual distinctions between this case and *Rhind*, we do not find the district court clearly erred.

For the foregoing reasons, the district court's judgment is AFFIRMED.