[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 23, 2002
THOMAS K. KAHN
CLERK

No. 01-14168

D. C. Docket No. 01-00002 CR-4-RH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SCOTT ALLEN RHIND,

Defendant-Appellant,

No. 01-14169

D.C. Docket No. 01-00002 CR-4-RH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLARD HARRIS BRADSHAW,

Defendant-Appellant,

D.C. Docket No. 01-00002 CR-4-RH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRET ERIC RHIND,

Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of Florida

**(April 23, 2002)**

Before BIRCH and DUBINA, Circuit Judges, and KATZ\*, District Judge.

DUBINA, Circuit Judge:

---

\*Honorable Marvin Katz, U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation.

# I. <u>BACKGROUND</u>

In these consolidated criminal appeals, appellants Bret Eric Rhind ("Bret"), Scott Allen Rhind ("Scott"), and Willard Harris Bradshaw ("Willard") (jointly referred to as "defendants") appeal their convictions and sentences imposed by the United States District Court for the Northern District of Florida. A grand jury indicted the defendants for possessing and concealing counterfeit money, in violation of 18 U.S.C. §§ 472 and 2. Additionally, the indictment charged each defendant with one count of possessing firearms and ammunition in and affecting interstate commerce as a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). The indictment further charged Willard with transporting a stolen vehicle in interstate commerce, in violation of 18 U.S.C. § 2312.

Each of the defendants filed motions to suppress. Following a hearing on the motions, the district court denied Willard and Bret's motions and granted in part and denied in part Scott's motion. Subsequently, all three defendants entered guilty pleas. The district court sentenced Willard and Bret to two 48 month concurrent terms of imprisonment and sentenced Scott to two 29 month concurrent terms of imprisonment.

The record demonstrates that on December 15, 2000, Willard test drove a 1994 Oldsmobile Cutlass Sierra in Lakeland, Florida. The following day, Willard stole the vehicle. Shortly thereafter, the defendants left Polk County, Florida, in

3

the stolen vehicle. Before leaving, Scott placed a Raven .25 caliber disassembled handgun under the rear passenger seat of the stolen vehicle and .25 caliber ammunition in the console between the front seats. Scott also placed an unloaded twelve-gauge shotgun under the carpet and spare tire in the trunk. Willard later admitted to the court that he knew that the weapons were in the car the day prior to his arrest.

The defendants traveled throughout Florida, Alabama, Louisiana, and Texas, passing counterfeit United States currency in $20 and $50 denominations. While in Greenwood, Louisiana, they stole a license tag off of a vehicle.

On the morning of December 30, 2000, law enforcement officers received information that Willard, Bret, and possibly a third man, were in possession of a stolen vehicle and counterfeit currency and were staying in Room 227 of a Motel 6 in Tallahassee, Florida. Officers determined that Willard had 15 felony warrants. They also verified that the tag on the defendants' vehicle, along with the vehicle itself, had been stolen.

Officers telephoned the room, asking the occupants to leave. As the defendants left the hotel room, officers observed Bret carrying a black bag. The officers detained and handcuffed the defendants. One of the officers looked inside

4

Bret's bag and noticed money and syringes. Later, a Secret Service agent searched the bag and discovered a counterfeit $50 bill.

The officers recovered fifty rounds of .25 caliber ammunition from the stolen vehicle's console and found the Raven .25 caliber handgun under the right rear passenger seat. From the trunk of the car, law enforcement officers seized a Hewlitt-Packard color printer, counterfeit bills in $20, $50, and $100 denominations, and a Stevens twelve-gauge shotgun. The officers then searched the motel room without a warrant or defendants' consent. The officers recovered additional counterfeit bills, including uncut sheets of counterfeit $20 and $50 bills.

In their presentence investigation reports ("PSI"), a United States Probation Officer recommended that Bret and Scott receive four-level enhancements based on their possession of firearms in connection with the underlying felony offenses. The probation officer made this recommendation pursuant to the United States Sentencing Guidelines ("USSG") § 2K2.1(b)(5), which provides as follows:

> If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels. . . .

USSG § 2K2.1(b)(5).

5

Bret and Scott objected to the enhancement, arguing that they did not use the firearms during the trip and the firearms did not facilitate the commission of any felony. They also argued that the presence of the firearms was merely incidental to the counterfeiting offense. The district court overruled their objections and imposed the four-level enhancement. The district court found (1) that Bret and Scott's possession of the firearms was not an accident or coincidence; (2) that while committing the counterfeiting offense, they used the car that transported the firearms; (3) that they could have easily obtained ammunition for the shotgun; and (4) the availability and appearance of either firearm could serve to promote their prolonged criminal episode.

## II. ISSUES

(1) Whether the district court properly denied Scott and Bret's motions to suppress evidence.

(2) Whether the district court properly imposed a four-level enhancement for each of the defendants' possession of firearms in connection with the underlying offenses.

## III. STANDARDS OF REVIEW

This court reviews a district court's denial of a defendant's motion to suppress under a mixed standard of review, reviewing the district court's findings

of fact under the clearly erroneous standard, and the district court's application of the law to those facts *de novo*. *United States v. Gil*, 204 F.3d 1347, 1350 (11th Cir. 2000), *cert. denied*, 531 U.S. 951, 121 S.Ct. 357, 148 L.Ed.2d 287 (2000).

This court reviews the district court's application and interpretation of the sentencing guidelines under the *de novo* standard of review, but reviews its findings of fact for clear error. *United States v. Harness*, 180 F.3d 1232, 1234 (11th Cir. 1999).

## IV. DISCUSSION

A. Suppression Motions

Bret and Scott argue that the district court erred when it denied their motions to suppress evidence seized from the black bag carried by Bret and from their motel room. They contend that under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the officer did not have justifiable suspicion to search the black bag. They posit that the officer could have squeezed the soft-sided bag to determine if it contained a weapon. Thus, they contend that the officer's search was unlawful.

After law enforcement officers called the motel room and told the defendants to leave, Bret was the first to exit the motel room. As he left, he carried a black, zippered, soft-sided bag or backpack. An officer handcuffed Bret and took

7

the bag. For his own safety, the officer opened the bag and observed money and syringes. Subsequently, a Secret Service Agent opened the bag and determined that it contained a counterfeit $50 bill.

In our view, the district court correctly found that the search of the black bag was justified under *Terry*. When the Secret Service Agent looked into the bag and saw syringes and money, he had probable cause to conduct a search. Moreover, based on the totality of the circumstances, the officers had a reasonable and objective suspicion that Bret was involved in criminal activity. The officers knew that Willard had 15 outstanding felony warrants, but they did not know which man was Willard. When Bret left the room carrying a bag, the officers did not know whether he was Willard, Bret, or the third, unidentified man. The officers also knew that the defendants had been riding in a stolen car with stolen license plates. Thus, the officers had a reasonable articulable suspicion, based upon objective facts, that the bag might contain a weapon or other contraband.

Assuming, however, that the district court erred by denying the motions to suppress based upon *Terry*, the contents of the bag would nevertheless have been admissible because the officers inevitably would have discovered the evidence in a routine inventory search following Bret's arrest for counterfeiting. *See United States v. Khoury*, 901 F.2d 948, 957-59 (11th Cir. 1990) (inventory searches must

follow standardized procedure and not turn into a purposeful and general means of discovering evidence of a crime). Thus, we conclude that the district court did not err by denying the motion to suppress the bag and its contents.

As to the warrantless search of the motel room, the district court held that although the search was improper, the officers inevitably would have discovered the evidence, and thus, the evidence was admissible. The defendants argue that this ruling was error because the government failed to establish that the police "were actively pursuing the lawful avenue of discovery when the illegality occurred." *Id.* at 960.

Assuming, that the district court erred in concluding that the police would inevitably have discovered the evidence, any Fourth Amendment violation would still be subject to a harmless error analysis. *Khoury*, 901 F.2d at 960. The inquiry would become "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). Here, any error was harmless because the other evidence of guilt was so overwhelming that the defendants suffered no prejudice from the admitted evidence. *United States v. Drosten*, 819 F.2d 1067, 1072 (11th Cir. 1987).

The defendants drove for several days in a stolen vehicle with stolen license plates. Officers recovered fifty rounds of .25 caliber ammunition from the stolen vehicle's console and found the Raven .25 caliber handgun beneath the right rear passenger seat. From the trunk of the car, law enforcement officers seized a Hewlitt-Packard color printer, counterfeit bills in $20, $50, and $100 denominations, and a Stevens twelve-gauge shotgun. Accordingly, we conclude that even if the district court erred in admitting the evidence seized from the motel room, the evidence the officers seized from the vehicle alone would have supported the defendants' convictions for the counterfeiting and firearms violations. For these reasons, we affirm the district court's denial of the defendants' motions to suppress.

B. Four-Level Enhancement

The defendants argue that the district court erred in imposing a four-level enhancement under USSG § 2K2.1(b)(5) for their possession of firearms. They contend that the government failed to prove, by a preponderance of the evidence, that they possessed the firearms "in connection with" the underlying felony offense. Rather than possessing the firearms "in connection with" the underlying offense, the defendants argue that their possession of firearms was a mere coincidence and unrelated to the underlying felony. We disagree.

10

The district court imposed the four-level enhancement, finding that the defendants possessed the firearms in connection with the underlying offense and that they did not possess the firearms by accident or coincidence. Rather, the defendants committed the counterfeiting offense with the use of the car which contained firearms. The defendants could have easily obtained ammunition for the shotgun. In addition, the mere availability and appearance of the firearms could have served to promote the defendants' prolonged criminal episode.

Sentencing Guideline § 2K2.1(b)(5) provides, in part, that the district court shall impose a four-level enhancement if the defendants used or possessed any firearm or ammunition "in connection with" another felony offense. While § 2K2.1(b)(5) does not define the phrase "in connection with," we have held that courts should give such phrases their ordinary meaning. *United States v. McClain*, 252 F.3d 1279, 1285 (11th Cir. 2001) "The Sentencing Guidelines hav[e] the force and effect of law, [and] are to be construed as if they were a statute, giving the words used their common meaning, *absent a clearly expressed manifestation of contrary intent.*" *Id.* at 1285 (quoting *United States v. Maria*, 186 F.3d 65, 70 (2d Cir. 1999), (alterations and emphasis in original) (quotation omitted).

Our circuit has considered the definition of "in connection with" in other sections of the guidelines. In *United States v. Young*, 115 F.3d 834 (11th Cir.

1997), we rejected a more restrictive approach to the definition of "in connection with" contained within USSG § 4B1.4(b)(3)(A) (1997).[1]  We determined that the meaning of the phrase "in connection with," contained within that section "merely reflects the context of [the defendant's] possession of the firearm."  *Id.* at 838.  Likewise, in *United States v. Matos-Rodriguez*, 188 F.3d 1300 (11th Cir. 1999), we gave the phrase "in connection with," contained within USSG § 2B5.1(b)(3),[2] an expansive interpretation.  According to its ordinary and natural meaning, we held that the firearm does not have to facilitate the underlying offense.  *Id.* at 1308-09.

Utilizing these analogous cases, we agree with the district court that enough evidence existed to justify finding that the defendants possessed the firearms "in connection with" the underlying felony.  The fact that the guns were not loaded or inoperable is not dispositive since criminals frequently use unloaded guns to execute crimes.  We know of no requirement that the firearms be loaded or

---

[1] USSG § 4B1.4(b)(3)(A) provides that the offense level for an armed career criminal is the greatest of:
> (3)(A) **34**, if the defendant used or possessed the firearm or ammunition in connection with a crime of violence or controlled substance offense, as defined in § 4B1.2(a), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a)[]; . . . .

[2] USSG § 2B5.1(b)(3) provides that
> (3) If a dangerous weapon (including a firearm) was possessed in connection with the offense, increase by **2** levels.  If the resulting offense level is less than level **13**, increase to level **13**.

operable to meet the "in connection with" requirement. Regardless, the defendants could have easily obtained ammunition for the shotgun to promote their counterfeiting scheme. Further, it would be reasonable to conclude that the presence of the firearms protected the counterfeit money from theft during the execution of the felony. Additionally, the length of time over which the defendants committed the crimes supports the district court's conclusion that the defendants possessed the guns "in connection with" the offense of counterfeiting.

For the foregoing reasons, we affirm the defendants' convictions and sentences.

**AFFIRMED.**