[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 14, 2007
THOMAS K. KAHN
CLERK

No. 06-15382
Non-Argument Calendar

_____

D. C. Docket No. 06-00004-CR-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES LAMAR LYONS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(March 14, 2007)**

Before DUBINA, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

James Lamar Lyons appeals his conviction for possession of one or more

firearms and ammunition by a convicted felon. 18 U.S.C. §§ 922(g)(1), 924(a)(2). Lyons argues that he never consented to the warrantless search of his residence and the firearms found pursuant to that search should have been suppressed. He also argues that his Miranda waiver was not voluntary, knowing, and intelligent. We affirm.

## I. BACKGROUND

A federal grand jury indicted Lyons on one count of possession of a firearm by a convicted felon. 18 U.S.C. § 922(g). Before his trial, Lyons filed a motion to suppress (1) the firearms and ammunition recovered from his house and car, and (2) certain statements he made after his arrest, on the grounds that he did not freely consent to the searches and his post-arrest statements were tainted because his arrest was made possible by those searches. The district court assigned the motion to a magistrate judge.

The facts presented at the suppression hearing before the magistrate judge established that on June 15, 2005, Officers Josh Williams and Mike Lawson of the Glynn County Police Department arrived at Lyons's residence after Lyons's girlfriend, Teresa Crews, called the police to report that Lyons was a felon in possession of one or more firearms. Williams testified that after Lyons answered the door, Lawson asked Lyons to provide identification. After Lyons complied,

2

Lawson asked him whether he had any guns inside the residence. When Lyons said no, Lawson asked whether they might search the house, and Lyons agreed, though neither officer told Lyons he could refuse consent. No guns were found, but Lawson spotted a gun safe. Lyons said there were no guns in the safe and he did not have a key to the safe, and handed his key ring to Lawson so that Lawson could attempt to open the safe. After trying to open the safe with each key on the ring, Lawson then asked for permission to search Lyons's car, and Lyons consented. Lawson found a firearm and ammunition in the truck, and Lyons was handcuffed and placed under arrest. Lawson also discovered another set of keys, and Lyons volunteered that the key to the safe was on that ring. Lawson went back into Lyons's house with the new key and opened the safe, where he found a second firearm. Williams initially testified that the firearm found in the car was a Marlin 30/30 rifle and the firearm found in the safe was a .357 Magnum, but after refreshing his memory, he corrected himself and stated that the Marlin was found in the safe and the Magnum in the car.

Officer Lawson then testified to these same facts. He also testified that before they knocked on Lyons's door, one of Lyons's neighbors told them that Lyons had a .357 Magnum in his truck and also owned a rifle. Lawson said that when Lyons answered the door, he asked whether they could discuss the phone call

3

the police had received from Crews. When Lyons let the officers into his house, Lawson told Lyons that the officers had been informed that Lyons was a felon in possession. Lyons immediately denied having any weapons in the house, but admitted that he was a convicted felon. It was then that Lawson asked if they could search his home.

On cross-examination, counsel for Lyons asked both officers whether Lawson told Lyons that they "needed to talk to him and he may want to sit down" as a ruse to gain entrance into his house. Both officers denied that Lawson made such a statement. Counsel for Lyons also asked whether either officer told Lyons "he could either allow his home to be searched or [the officers] would go get a warrant and come back." Again, both officers denied making such a statement.

Lyons then testified. He stated that when he answered the door, Officer Lawson said, "Well, we've got a phone call. We need to talk to you inside the house." Lyons asked what was going on, and Lawson replied, "Well, you know it's Teresa Crews, right?" At this point Lawson held his head down a bit and continued, "Well, you may want to sit down." Lyons testified that when he let the officers in the house, Williams closed the door and stood near it, and Lawson proceeded toward the living room area. The officers told Lyons about Crews's call and Lyons admitted to being a convicted felon. Lawson then asked if they could

4

search the house, and Lyons asked why they would do so based only on one person's statement. Lawson then responded that if Lyons didn't consent, the officers would just get a warrant and search anyway. Lyons replied, "Well, I guess I can't stop you," and Lawson began his search. Lyons testified that he responded in the same manner when Lawson asked whether the officers could search his truck.

After hearing this testimony, the magistrate judge entered his Report and Recommendation, in which he found that the officers had told Lyons they had information he was a felon in possession; Lyons told the officers they could search his home and truck, and provided them with the keys to his truck; and Lyons volunteered that the key to his gun safe was on the key ring found in his truck. The magistrate judge found "no credible evidence . . . that Williams or Lawson coerced or otherwise pressured Lyons to give consent to the searches." The magistrate judge also found that Lyons's post-arrest statements were voluntarily made.

Over Lyons's objections, the district court noted that the magistrate judge found the testimony of the officers to be more credible than Lyons's and adopted the Report and Recommendation of the magistrate judge. The court concluded that the second search of Lyons's home was a continuation of the first and Lyons had consented to the search of his home and his truck. The court also concluded that

5

Lyons's post-arrest statements had been voluntarily given. Lyons proceeded to trial and was convicted.

## II. STANDARDS OF REVIEW

"This court reviews a district court's denial of a motion to suppress under a mixed standard of review, reviewing the district court's findings of fact under the clearly erroneous standard, and the district court's application of the law to those facts de novo." United States v. Rhind, 289 F.3d 690, 693 (11th Cir. 2002). Whether consent to a search was voluntary is a question of fact we review for clear error. United States v. Acosta, 363 F.3d 1141, 1151 (11th Cir. 2004). "[I]n evaluating the factual version of events between the law enforcement officers and [a defendant], we should defer to the magistrate judge's determinations unless his understanding of the facts appears to be unbelievable." United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002).

## III. DISCUSSION

Lyons raises two challenges. First, he maintains that the district court erred when it concluded he freely consented to the search of his house and truck. Second, he argues that his post-arrest statements were inadmissible because he would not have been placed under arrest absent the improper search of his house and truck. We address each argument in turn.

*A. The District Court Did Not Clearly Err When It Concluded That Lyons Voluntarily Consented to the Search of His House and Truck.*

Whether an individual voluntarily consented to a search is based on the totality of the circumstances. Acosta, 363 F.3d at 1151. A district court looks at several factors to determine whether consent to a search was voluntary, including: (1) whether the defendant was free to leave; (2) whether there was coercive police procedure; (3) the extent of the defendant's cooperation and awareness of the right to refuse consent; (4) the extent of the defendant's education and intelligence; and (5) the defendant's belief that no incriminating evidence would be found. Ramirez-Chilel, 289 F.3d at 752.

The district court did not clearly err when it concluded that Lyons voluntarily consented to the search of his truck and both searches of his home. Although the third factor listed above weighs in Lyons's favor, the totality of the circumstances establishes that Lyons voluntarily consented to the search of his house and truck. The district court credited the factual finding of the magistrate judge that the testimony of the officers was more credible than the testimony of Lyons, and that finding is not "unbelievable." See id. at 749. The officers testified that they did not deceive Lyons into allowing them into his house nor coerce him into letting them search his house or truck. Instead, they testified that they told Lyons why they were there, asked whether they might search his house and truck,

and were given permission to do so. They also testified, and Lyons did not deny, that Lyons volunteered the information that the key to the safe was present on the key ring found in his truck. Because Lyons had previously agreed to allow the officers to search his house and provided them with another set of keys with which they could try to open the safe, the district court did not clearly err in concluding that by volunteering this information Lyons showed that he consented to Lawson's re-entering of the house. It matters not whether we construe this consent as a continuation of Lyons's initial consent or as a renewed consent to allow Lawson to search the safe.

### B. Lyons's Post-Arrest Statements Were Voluntarily Made and Were Not the Fruit of an Illegal Search.

Lyons's only argument on appeal that his post-arrest statements were inadmissible is that his arrest was the fruit of an unlawful search. We have already concluded that the district court did not clearly err when it held that Lyons voluntarily consented to the search of his truck and both searches of his home. We conclude that the district court did not err when it admitted Lyons's post-arrest statements as well.

### IV. CONCLUSION

Lyons's conviction is

**AFFIRMED.**