[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15931
Non-Argument Calendar

_____

D.C. Docket No. 8:11-cr-00014-VMC-AEP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SCOTT ALLAN BENNETT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 1, 2012)

Before MARCUS, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Scott Bennett appeals his total 36-month sentence for one count of making a

false statement on a military housing application, in violation of 18 U.S.C. § 1001;

one count of wearing an armed forces uniform without authorization, in violation of 18 U.S.C. § 702; and two counts of violating a defense property security regulation by possessing prohibited weapons, in violation of 50 U.S.C. § 797(a)(1).  On appeal, Bennett argues that a weapons-possession enhancement, U.S.S.G. § 2B1.1(b)(14)(B), should not apply to his sentence since no evidence showed that Bennett had possessed a weapon at the time he made false statements on his military housing application.  After careful review, we affirm.

We review for clear error the district court's determination of whether the defendant possessed a firearm in connection with the offense for purposes of a U.S.S.G. § 2B1.1(b)(14)(B) enhancement.  See United States v. McClain, 252 F.3d 1279, 1284, 1288 (11th Cir. 2001) (upholding application of dangerous weapons enhancement, which was nearly identical to § 2B1.1(b)(14)(B), under U.S.S.G. § 2F1.1, later deleted and consolidated with U.S.S.G. § 2B1.1, see U.S.S.G. App. C., amend. 617).  For a district court determination to be clearly erroneous, we, after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been committed.  United States v. Foster, 155 F.3d 1329, 1331 (11th Cir. 1998).  "Where the evidence has two possible interpretations, the district court's choice between them cannot be clearly erroneous."  Id.

When reviewing a district court's sentence, we do not necessarily have to decide guidelines issues or remand cases for new sentence proceedings where the guidelines error, if any, did not affect the sentence. United States v. Keene, 470 F.3d 1347, 1349 (11th Cir. 2006). To determine if the error was harmless, we, first, must determine that the district court would have imposed the same sentence even if it had decided the guidelines issue in the defendant's favor. Id. Second, the sentence must be reasonable based on the U.S.S.G.§ 3553(a) factors and the advisory guidelines range, which did not include the alleged guidelines error. Id. at 1349-50.

For an offense of fraud or deceit, the Sentencing Guidelines require the offense level to be enhanced if the offense involved "possession of a dangerous weapon (including a firearm) in connection with the offense." U.S.S.G. § 2B1.1(b)(14)(B). We have held that courts should give the guidelines phrase "in connection with" its ordinary meaning. United States v. Rhind, 289 F.3d 690, 695 (11th Cir. 2002). We have held that the ordinary meaning of "in connection with" does not require that the weapon was used to facilitate the underlying offense. Id. We have not addressed explicitly the full meaning of "in connection with" as used in § 2B1.1(b)(14)(B) but, in McClain, we applied a nearly identical guideline, under U.S.S.G. § 2F1.1, later deleted and consolidated with U.S.S.G. § 2B1.1. See U.S.S.G. App. C., amend. 617; McClain, 252 F.3d at 1288. In McClain, a defendant had driven young recruits to

3

businesses and waited for them in a car while they cashed counterfeit checks. McClain, 252 F.3d at 1281-82. A search of the defendant's car had revealed a firearm in the passenger compartment. Id. at 1282. A recruit told law enforcement that the defendant always kept a firearm in the vehicle when the defendant drove her to cash checks. Id. We held that, since the defendant had supervised a scheme with a large amount of cash in conjunction with young recruits with whom he was relatively unfamiliar, it was reasonable to infer that the defendant had carried the firearm "in connection with" the scheme to prevent a "rip-off." Id. at 1288. We based that holding on the totality of the circumstances. Id.

We have also consistently applied an expansive definition to the "in connection with" phrase in other guidelines contexts. See, e.g., United States v. Jackson, 276 F.3d 1231, 1234-35 (11th Cir. 2001) (unlawful possession, § 2K2.1(b)(5)); United States v. Matos-Rodriguez, 188 F.3d 1300, 1308-09 (11th Cir. 1999) (counterfeiting, § 2B5.1(b)(3)); United States v. Young, 115 F.3d 834, 837-38 (11th Cir. 1997) (armed career criminal, § 4B1.4(b)(3)(A)). In Jackson, when police had attempted to arrest the defendant on an outstanding warrant, the defendant, without ever reaching a gun, repeatedly attempted to reach into his pocket, which contained a gun, while he assaulted and battered the arresting officers. Jackson, 276 F.3d at 1232-33. We found no clear error where the district court had determined that the defendant

4

had made a real and determined effort to use the gun "in connection with" the assault of the officers. Id. at 1235. In Matos-Rodriguez, after the defendant sold counterfeit money to a police informant, the defendant threw a pistol out of his car window during a high-speed chase with police. Matos-Rodriguez, 188 F.3d at 1302-03. We found no clear error where the district court had determined that the defendant had possessed a pistol "in connection with" his selling counterfeit money. Id. at 1309.

In Young, a search of the defendant's apartment had uncovered guns, one of which had been stolen in an earlier burglary where the defendant's fingerprints had been found. Young, 115 F.3d at 835. We held that an armed career criminal possesses a firearm "in connection with" a crime of violence when that firearm is obtained during the commission of a burglary, even if the firearm was not used to facilitate the burglary. Id. at 838.

Based on the commentary to U.S.S.G. § 2K2.1, the "in connection with" phrase in its subsections (b)(6)(B) and (c)(1) in general applies if the firearm or ammunition facilitated, or had the potential of facilitating, another offense. U.S.S.G. § 2K2.1, comment. (n.14). The commentary to the application instructions of the Sentencing Guidelines says that definitions of terms that appear in specific guideline sections are not designed for general applicability, and their applicability to other sections must be determined on a case by case basis. U.S.S.G. § 1B1.1, comment. (n.2). The

5

relevant conduct to determine a guideline range includes all acts and omissions committed by the defendant that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.    U.S.S.G. § 1B1.3(a)(1)(A).   Where U.S.S.G. § 3D1.2(d) would require grouping of multiple counts, relevant conduct includes all acts and omissions that are part of the same course of conduct.  U.S.S.G. § 1B1.3(a)(2).  If the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior, offenses are to be grouped or are excluded from grouping depending on how the offenses are listed in this subsection. U.S.S.G. § 3D1.2(d).  If offenses are not listed in § 3D1.2(d), multiple offenses may or may not be grouped depending on a case-by-case determination based on the facts of the case and the applicable guidelines.  Id.  The sentencing guidelines do not apply to any count of conviction that is a Class B misdemeanor.  U.S.S.G. § 1B1.9.

Here, for purposes of his false-statement offense, Bennett had agreed by lease to follow various security regulations at the military base.  Bennett violated those security regulations when he possessed unauthorized weapons at his on-base apartment, the apartment which he had obtained through his false-statement offense. Bennett's failure to disclose or seek authorization to possess the firearms helped Bennett avoid detection of his false-statement offense.  Therefore, the district court

did not clearly err when the court applied the weapons possession enhancement to Bennett's guideline range.

But even if we were to determine that the application of the § 2B1.1(b)(14)(B) enhancement was clearly erroneous, the error was harmless. The district court said that it had considered a higher sentence, but "came down with" the 36-month sentence to give Bennett the benefit of the doubt and to match the government's recommendation. As for Bennett's claim that the phrase "came down with" did not mean that the court had considered a higher sentence and then reduced it, Bennett's interpretation is strained when read in context. As the record shows, the district court said in the immediately preceding sentence that it had considered a higher sentence. Further, the district court later announced that it did not matter to the court how the 36-month sentence was reached as long as Bennett's sentence was 36 months. This statement, by itself and in context, supports the view that the court would have sentenced Bennett to 36 months even without the § 2B1.1(b)(14)(B) enhancement.

Moreover, even assuming Bennett's guideline range was 1-7 months,[1] a 36-month sentence was not substantively unreasonable on this record. The district court carefully explained that Bennett's presence and his cache of weaponry

---

[1] We based this range on an offense conduct of 6 and a criminal history category of II.

presented a significant security breach, and Bennett had displayed a pattern of falsehoods.  Thus, any error in the guidelines calculation was harmless.

**AFFIRMED.**