[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12329
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-00290-CB-B-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KATHEA GENEVA ADAMS,
a.k.a. Shay Henderson,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(May 8, 2013)

Before CARNES, BARKETT and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Kathea Geneva Adams appeals her 120-month

sentence for possession of a firearm by a convicted felon, in violation of 18 U.S.C.

§ 922(g)(1).  On appeal, Adams argues that the district court erred by applying the cross-reference of U.S.S.G. § 2K2.1(c)(1)(A) to calculate her base level offense because there was insufficient evidence that Adams possessed the gun in connection with the commission of an attempted murder.  After review, we affirm.

## I.  BACKGROUND

### A.    Offense Conduct

At the outset, we note that the vast majority of the facts recounted here are undisputed and thus are admitted.  On October 3, 2011, Defendant Adams, who was on probation for a felony kidnapping at the time,[1] and a female associate, Kimberly Pickron, took Rachel Lents[2] on a car ride out of Mobile, Alabama, under the false pretense of meeting wealthy prostitution clients.  After driving approximately 100 miles on a rural road, Adams pulled off the road. Adams then brandished a small black revolver, and informed Lents that "[Adams] brought her to the area 'to put a bullet in her head.'"  Lents jumped out of the vehicle and began running toward a wooded area.

What happened next is disputed by Defendant Adams.  According to the Presentence Investigation Report ("PSI"), Lents heard multiple gunshots fired with

---

[1]Adams was convicted of second degree kidnapping in state court on November 30, 2009.

[2]The victim's last name is spelled "Lents" in the PSI and "Lentz" in the sentencing hearing transcript. For consistency, the PSI's spelling "Lents" is used throughout this opinion.

several bullets impacting the ground around her.  Adams denied firing at Lents.[3]  It is undisputed that Lents then crawled into the trees, sustaining numerous wounds, and remained there until Lents believed Adams had left the area. Thereafter, Lents sought refuge in a nearby home, and the police were called.

Clarke County Sheriff's Office Investigators Ron Baggette and Virgil Chapman interviewed Lents within 30 minutes after the incident was reported. The investigators also interviewed the resident of the home to which Lents retreated, who stated that he heard four shots.  Investigator Baggette next searched Adams's vehicle, pursuant to a warrant, and found Adams's driver's license, three plastic bags of crack cocaine, a small black revolver holding four spent .38-caliber shells, and one live round of .38-caliber hollow-point ammunition.

The following day, Investigators Baggette and Chapman interviewed Defendant Adams, who admitted to having lured Lents to the remote area under false pretenses.  Adams stated that she meant to simply leave Lents there in retribution for Lents having slept with Adams's husband. Adams initially denied owning a firearm.  When Investigator Baggette confronted her with the revolver taken from her vehicle, Adams admitted to owning the weapon and to firing "a few rounds in the air" to scare Lents off after Lents had fled Adams's car.  Adams maintained, however, that she did not shoot at Lents.

---

[3]In a factual resume signed by Defendant Adams and submitted to the district court, Adams admitted that she confessed to driving Lents out to the remote area under false pretenses and to firing a gun.

In addition to her federal firearm charge, Adams was also charged in state court with attempted murder.  At the time of her federal sentencing, Adams's state court criminal proceedings were still pending.

## B.    Presentence Investigation Report

The PSI calculated Defendant Adams's base offense level of 33 by applying a cross-reference to U.S.S.G. § 2A2.1(a)(1), as mandated by U.S.S.G. § 2K2.1(c)(1), based on Adams's use of the firearm in the commission of attempted murder.  The probation officer noted that although the base offense level for possession of a firearm by a felon is usually determined by § 2K2.1, and that under that guideline Adams's offense level would be 24, the application of § 2K2.1(c)'s cross-reference is proper where, as here, the firearm is used in connection with the commission of a connected offense, here, attempted murder.

After applying a 3-point reduction for timely acceptance of responsibility, the PSI arrived at a total offense level of 30.  When coupled with Adams's criminal history category of III, that offense level yielded an advisory guidelines range of 121 to 151 months.  As the maximum statutory penalty was 10 years, the PSI recommended a guidelines range of 120 months.

Adams objected to the application of the cross-reference to § 2A2.1(a)(1) because she maintained that the firearm was not used in connection with the commission of another offense.

4

**C.    Sentencing Hearing**

At sentencing, the government presented two witnesses to show that Adams used the firearm in connection with the commission of an attempted murder: (1) Investigator Baggette, who recounted his interviews with Lents and Adams, and (2) Special Agent Nicholas Murphy of the Bureau of Alcohol, Tobacco, Firearms and Explosives, who testified about Adams's prior kidnapping conviction.

Over Defendant Adams's hearsay objection, Investigator Baggette testified that Lents said she heard bullets striking around her while she fled and after she had fallen to the ground after running. Although Investigator Baggette acknowledged that Lents admitted to being a drug addict, he stated that he did not observe any indications of Lents being under the influence of any substance while giving her statement. The government then played a portion of Lents's videotaped statement.

As to his interview with Adams, Investigator Baggette testified that Adams initially lied about possessing a firearm and only recanted when confronted with the weapon removed from her car. Baggette verified that Adams admitted to having fired the weapon four times, but that Adams insisted that she fired into the air and not at Lents. Investigator Baggette also confirmed that Adams admitted that she was mad at Lents for Lents having slept with Adams's husband. Investigator Baggette denied hearing that Adams was simply going to let Lents go

5

from anyone but Defendant Adams herself.

Special Agent Murphy then testified about Adams's 2009 conviction for kidnapping. He confirmed that Adams, holding a black handgun, and a male accomplice ambushed a female acquaintance on the street and forced her into a car. Adams drove the vehicle to a remote location, where Adams and her accomplice beat the victim for the alleged theft of money from Adams and others. They then placed the victim, tied hand and foot, in the trunk of the car, and drove the vehicle to an abandoned house before releasing her. During cross-examination, Special Agent Murphy acknowledged that no bullets were fired during the 2009 kidnapping.

Defendant Adams called no witnesses. Instead, Adams argued that the government's evidence was insufficient to support a finding that the gun was used in connection with an attempted murder.[4]

Prior to ruling on Adams's objection, the district court made a specific finding by clear and convincing evidence that "Ms. Adams did commit the attempted murder on Ms. Lent[s] [and that] the evidence is sufficient to support

---

[4]Adams also objected to the district court's admission of Lents's statement into evidence through Investigator Baggette's testimony, in violation of her Sixth Amendment right to confront her accuser. The district court overruled Adams's objection, and Adams has abandoned her Sixth Amendment challenge on appeal. See United States v. Cunningham, 161 F.3d 1343, 1344 (11th Cir. 1998) (noting that an issue is deemed abandoned when the defendant fails to offer an argument on that issue on appeal).

We also note that Lents's whereabouts were unknown at the time of the sentencing hearing.

6

that finding by the [c]ourt." The district court further pointed to the "thin line of difference between what the [d]efendant has admitted and what the victim ha[d] said actually happened." Specifically, the district court referred to the uncontested facts that Adams threatened to "put a bullet in [Lents's] head," and that Adams fired multiple shots.

The district court then overruled Adams's objection on the basis of the district court's factual finding and adopted the PSI's recommendations without change. The district court sentenced Adams to 120-months' imprisonment, the statutory maximum. The district court rejected Adams's argument for a lower sentence, by stating that Adams's offense was "extremely dangerous, extremely life threatening" and that, along with Adams's prior kidnapping conviction, it reflected a "personal pattern of behavior and how [Adams] deal[s] with conflict."

## II.  STANDARD OF REVIEW

We review a district court's application of the Sentencing Guidelines de novo and its factual determinations for clear error. United States v. Rhind, 289 F.3d 690, 693 (11th Cir. 2002). "A trial court's choice between 'two permissible views of the evidence' is the very essence of the clear error standard of review." United States v. Rodriguez De Varon, 175 F.3d 930, 945 (11th Cir. 1999) (en banc) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 574, 105 S. Ct. 1504, 1511 (1985)).  Thus, we will not "disturb a district court's findings [absent]

7

'a definite and firm conviction that a mistake has been committed.'" <u>United States v. Ghertler</u>, 605 F.3d 1256, 1267 (11th Cir. 2010) (internal quotations omitted).

## III.  DISCUSSION

On appeal, Adams argues that the district court clearly erred in finding that she committed attempted murder in conjunction with unlawful possession of the firearm. As a result, the district court improperly applied U.S.S.G. § 2K2.1(c)(1)(A)'s cross-reference to § 2A2.1(a)(1)'s base offense level guidelines for attempted murder.

### A.    Section 2K2.1's Cross-Reference Provision

If the defendant committed or attempted to commit a crime while unlawfully possessing a firearm, § 2K2.1's cross-reference provision instructs the district court to apply § 2X1.1, the guideline for attempt, to calculate the defendant's offense level, "if the resulting offense level is greater than" the offense level calculated under § 2K2.1.  <u>See</u> U.S.S.G. § 2K2.1(c)(1)(A).  The guideline for attempt, in turn, directs the district court to apply "[t]he base offense level from the guideline for the substantive offense."  U.S.S.G. § 2X1.1(a).  The guideline for the substantive offense of attempted murder, § 2A2.1(a)(1), assigns a defendant a base offense level of 33 for a first degree murder attempt.  <u>See</u> U.S.S.G. § 2A2.1(a)(1).

In this case, the district court found that Defendant Adams attempted to murder Lents.  Thus, if the application of the attempted murder guideline produces

8

a higher offense level than would otherwise be obtained by applying the unlawful firearm possession guideline, then § 2K2.1(c)(1)(A) mandates that the district court apply the attempted murder guideline to determine Adams's offense level. Here, the probation officer determined that under § 2K2.1, the unlawful firearm possession guideline, Adams's offense level would be 24. However, under § 2A2.1(a)(1), the attempted murder guideline, Adams's offense level was 33. Accordingly, assuming that the district court's attempted murder finding is not clearly erroneous, the district court was required to use the attempted murder guideline rather than the unlawful firearm possession guideline to determine Adams's offense level. See U.S.S.G. § 2K2.1(c)(1)(A).

## B. District Court's Finding of Attempted Murder

We first reject Adams's claim that the district court impermissibly relied on hearsay testimony. At sentencing hearings, district courts may "consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a); see also United States v. Baker, 432 F.3d 1189, 1253–54 (11th Cir. 2005). Hearsay evidence, including statements by absent witnesses, can be relied on at sentencing, so long as the evidence bears "sufficient indicia of reliability" and "the defendant ha[d] an

9

opportunity to rebut the evidence." Baker, 432 F.3d at 1253; United States v. Gordon, 231 F.3d 750, 760–61 (11th Cir. 2000).

Here, the district court was permitted to rely on Investigator Baggette's testimony and Lents's videotaped statement to find that Defendant Adams attempted to murder Lents because Lents's hearsay statement was corroborated by other evidence and was reliable, and because Adams testified and had an opportunity to rebut that evidence.

First, as the district court noted, Lents's statement, taken within 30 minutes after the incident was reported, and Adams's version of events were nearly identical. Adams's account differs from that of Lents only in two regards.[5] Lents stated that Adams fired at her, while Adams claimed firing into the air. And, Adams insisted that she told Lents that Adams was letting Lents go instead of killing her.

Second, by corroborating much of Lents's statement, Adams's own confession obliterates the "thin line of difference" between both accounts. Adams admitted to luring Lents out to a remote rural area under false pretenses. Adams confessed to pointing a gun at Lents and telling Lents that she had brought her to a

---

[5]Adams points to a perceived inconsistency in Lents's statement. At one point, Lents told Investigator Baggette that Lents heard bullets impact the ground next to her after she fell to the ground. At another point, Lents told Baggette that she heard the gunshots after Lents exited Adams's vehicle. But even if Lents was inconsistent as to whether she heard the gunshots while running or after having fallen to the ground, Lents was clear that she heard bullets strike the ground. This one minor inconsistency, by itself, does not undermine the reliability of her statement.

10

remote area to "put a bullet" in her head.  Adams further acknowledged that her act was driven by her anger over Lents's sleeping with Adams's husband. Importantly, Adams admitted to firing her weapon four times.

Moreover, Adams's lies to police about the fact that she did not own a gun, coupled with the circumstances surrounding her prior violent kidnapping conviction, lent reliability to the disputed portion of Lents's account.  Thus, Lents's statement, as reported by Investigator Baggette, bore sufficient indicia of reliability and was properly considered by the district court.  U.S.S.G. § 6A1.3(a); see also Baker, 432 F.3d at 1253–54.

Third, we find no merit to Defendant Adams's claim that Adams was denied the opportunity to attack Lents's credibility, in violation of the Federal Rules of Evidence.  After the district court viewed portions of the video recordings of Lents's statement, taken within 30 minutes after the incident was reported, Adams cross-examined Investigator Baggette about possible inconsistencies.  Further, the district court heard Investigator Baggette verify that Lents identified herself as a prostitute and a drug addict, but that Baggette did not observe any indication of Lents being under the influence at the time Lents gave the statement.  And Adams was at no time precluded from presenting her version of events.  The district court ultimately weighed the evidence and chose to believe Lents over Adams.  The Federal Rules of Evidence did not bar any of this evidence from being heard and

11

considered by the district court.  Because Defendant Adams had the opportunity to and did rebut the evidence during cross-examination, her claim fails.

## IV.  CONCLUSION

For all these reasons, we conclude that the district court did not clearly err in finding that Defendant Adams had committed attempted murder.  Consequently, the district court properly cross-referenced Adams's base offense level from unlawful possession of a firearm to attempted murder.  Accordingly, we affirm Adams's sentence.

**AFFIRMED.**