[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10934
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20524-MGC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID YEG HOM,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 15, 2013)

Before TJOFLAT, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

A Southern District of Florida jury convicted David Yeg Hom of possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and the District Court sentenced him under 18 U.S.C. § 924(e)(1) to a prison term of 220 months.  Hom now appeals his conviction and sentence.  He challenges his conviction on the ground that the District Court erred in denying his motion to suppress his post-arrest statements to the police because he "was in an impaired mental and physical state" when the officers obtained his waiver of his *Miranda*[1] rights.  He challenges his sentence on two grounds: the District Court erred (1) in applying a four-level enhancement to his base offense level pursuant to U.S.S.G. § 2K2.1(b)(6)(B), because he did not use or possess a firearm in connection with a felony offense, and (2) in sentencing him as an armed career criminal, because his prior convictions were not charged in the indictment or found by the jury.  We address these challenges in turn.

I.

The circumstances that led to Hom's arrest, his interrogation by an agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and a Miami Shores Police Department ("MSPD") detective were these.

Hom was looking for Willie Weaver because Weaver, who had an extensive criminal record, had stolen three guns from him.  Hom thought Weaver might be

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2

hiding out at the Miami Shores Hotel, so he drove to the hotel in his black Dodge Charger. He discovered that Weaver and his girlfriend, Isabel Greenberg, were in room No. 48. Armed with a handgun, Hom began banging violently on the door, yelling and screaming , "I know you're inside, come out, I know you are in there." Hom had threatened Weaver before, so Weaver called the police. The MSPD dispatcher sent officers to the motel under code "232," an aggravated assault in progress. The dispatcher told them that Hom was an Asian male and that he had driven to the motel in a black Dodge Charger. On arrival, they found the car, with Wellington Griffin siting in the front seat. They had an outstanding warrant for Griffin's arrest, so they took him into custody. Officer Rivera then located Hom trying to gain access to a motel room to hide. He brought Hom to room 48, where Weaver and Greenberg identified him. Hom acknowledged to Rivera that he had come to the motel to find Weaver, because Weaver had stolen guns from him.

Hom gave the officers consent to search his automobile. They found three backpacks and two duffel bags containing guns and ammunition inside the trunk. Hom identified the backpacks and duffel bags as his, but stated that the guns belonged to his wife, Tara Hom. In all, the search revealed two firearms and well over 80 rounds of ammunition; a Mac-10 semiautomatic pistol extender; 42 rounds of .45 caliber bullets; twenty .223 caliber rifle rounds; a Colt gun case and a fully-loaded .45 caliber magazine; and a Browning 9 mm pistol.

3

The officers arrested Hom for possessing a firearm, weapon, and ammunition as a convicted felon, transported him to the MSPD's main stationhouse for booking, and notified the ATF. After he was booked, ATF Agent Morales and MSPD Detective Cazzola, the lead detective in the case, asked Hom if he would be willing to speak to them. Agent Morales provided Hom with a *Miranda* Rights and Waiver form and had Hom read the form out loud and indicate his understanding of each right by placing his initials on the line and his signature at the end. Before he signed the form, Hom said that he had smoked marijuana two days before, but was not under the influence of any drugs and alcohol. He explained that he had not slept much in the previous two days because he had been searching for Weaver, who had stolen three rifles and a handgun from his business, Professional Movers, in Hialeah Gardens. He later recanted his statement that Weaver had stolen the firearms from his business and said that they were stolen from a hotel room the previous week.

Hom said that he and Griffin went to the Miami Shores Motel. He knocked on the door to Weaver's room, but Weaver would not answer. He denied carrying a gun at the time, insisting that the object he was carrying in his hand was a "cigarette." When asked about the firearms found in the trunk of his car, he claimed that his wife, Tara Hom, must have put them there. Shortly after the interview concluded, Hom signed a consent form to give a DNA specimen. It

4

revealed that Hom had handled the Browning 9 mm pistol recovered from the trunk of his car.

Hom claims that he signed the *Miranda* Rights and Waiver form and submitted to questioning while in an impaired physical and mental state. Accordingly, after he was indicted for violating 18 U.S.C. § 922(g)(1), he moved the District Court to suppress the statements he made to Agent Morales and Detective Cazzola.

Attached to Hom's motion was the deposition of Detective Gazzola and an opinion letter from Dr. Juan B. Espinosa, a retained psychiatrist and neurologist. Cazzola testified that he became involved in the case when he was called to the scene by Officer Rivera. He found Hom was sitting in the patrol car and "was really, really under the influence of narcotics," "coming down off crack cocaine." He was having trouble standing. A friend of Hom's told Cazzola that they had been "smoking crack for 72 hours straight," including a couple of hours before his arrest. Cassola said that during Hom's interview at the stationhouse, Hom kept nodding off; but "[s]trangely, it was only around the important questions where he would nod out." Regarding Hom's speech, it was "very lucid and coherent."

In his opinion letter, based on a reading of Cazzola's deposition, medical and legal records provided by Hom's counsel, and his examination of Hom, Dr. Espinosa concluded that Hom "was under the influence of substances at the

5

moment of his arrest," and that it was "very probable that he was not competent to give consent or meaningful information at that time."

At the evidentiary hearing before the District Court, Agent Morales testified that, before he and Detective Cazzola interviewed Hom, he told them that he was a high school graduate and understood English. Morales said that he presented Hom with a *Miranda* waiver form, that Hom appeared to understand his rights, reading them out loud, and that he waived his rights, signing the form. During the interview, Hom "looked a little sleepy," but was "lucid" and "coherent," in his response to questioning. Agent Morales had read Detective Cazzola's deposition, but did not believe Cazzola's testimony that Hom was under the influence of narcotics or that he was coming down from crack. Nor did Morales believe that Hom "was genuinely falling asleep" during the questioning; rather, he seemed to pretend to fall asleep when asked "hard questions."

Officer Rivera testified that during his encounters with Hom at the motel, Hom did not appear to be sick or under the influence of narcotics. Hom looked "normal," may have been tired, but never fell asleep midsentence. He voluntarily consented to a search of his car even after being informed that he did not have to consent.

At the conclusion of the hearing, the court denied Hom's suppression motion. It credited Agent Morales testimony, disregarded Cazzola's testimony that

Hom was under the influence of crack cocaine when he saw him at the motel, and found that Hom understood his *Miranda* rights and knowlingly and voluntarily waived them.[2]

We review the denial of a motion to suppress as a mixed question of law and fact. *United States v. Spoerke*, 568 F.3d 1236, 1244 (11th Cir. 2009). Rulings of law are reviewed *de novo*, while the court's findings of fact are reviewed for clear error. "The district court's ultimate conclusion on the voluntariness of a confession, or the waiver of *Miranda* rights, raises questions of law to be reviewed *de novo*." *United States v. Barbour*, 70 F.3d 580, 584 (11th Cir. 1995) (quotation omitted).

Before it may introduce a defendant's uncounseled statements made during custodial interrogation, the government must show that the defendant made a voluntary, knowing and intelligent waiver of his privilege against self-incrimination and his right to counsel. *United States v. Beale*, 921 F.2d 1412, 1434 (11th Cir. 1991). "This showing has two distinct dimensions: (1) relinquishment of the right must have been the product of a free and deliberate choice rather than intimidation, coercion, or deception, and (2) waiver must have been made with the awareness of both the right being abandoned and the consequences of the decision to abandon that right." *Id.* A waiver of *Miranda* is effective where the "totality of

---

[2] We infer this finding from the statements the court made during and at the conclusion of the hearing.

the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension." *Barbour*, 70 F.3d at 585. A written *Miranda* waiver "is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." *United States v. Beckles*, 565 F.3d 832, 840 (11th Cir. 2009).

We find no error in the District Court's denial of Hom's motion to suppress. The court did not clearly err in its factual finding that Hom's *Miranda* waiver was not obtained by intimidation, coercion, or deception, and there was strong evidence—including a written *Miranda* waiver—that Hom was aware of his rights and the consequences of abandoning them. We therefore affirm Hom's conviction, and move to the challenges to his sentence.

## II.

We review a district court's interpretation and application of the Sentencing Guidelines *de novo, United States v. Rhind*, 289 F.3d 690, 693 (11th Cir. 2002), and its findings of fact for clear error. *Id.* Evaluating whether a firearm was used "in connection with" a felony offense is a factual determination and is evaluated for clear error. *United States v. Whitfield*, 50 F.3d 947, 949 & n.8 (11th Cir. 1995). To find clear error, we "must be left with a definite and firm conviction that a mistake has been committed." *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004) (quotation omitted).

8

In determining a defendant's total offense level under the Guidelines, the court consults U.S.S.G. § 2K2.1(b)(6)(B), which provides a four-level enhancement where the defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). It is the government's burden to show by a preponderance of the evidence that the evidence warrants the enhancement. *United States v. Kinard*, 472 F.3d 1294, 1298 (11th Cir. 2006).

Simple assault does not qualify as a felony under Florida law, so the conduct must rise to the level of an aggravated assault in order to qualify as a felony. Fla. Stat. § 784.011(2). Under Florida law, an assault is "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so" along with "some act which creates a well-founded fear in such other person that such violence is imminent." Fla. Stat. § 784.011(1). An aggravated assault is an assault which involves the use of a "deadly weapon without intent to kill" or is done "with an intent to commit a felony." Fla. Stat. § 784.021(1).

The government's proof at trial—which mirrored the evidence before the court when it heard Hom's motion to suppress—was sufficient to satisfy, by a

preponderance of the evidence, the elements of the crime of felony aggravated assault under Florida law. *See* Fla. Stats. §§ 784.011 and 784.021. Thus, there was no clear error in the district court's finding that Hom possessed a firearm in connection with another felony offense.

### III.

We review constitutional sentencing issues de novo. *United States v. Steed*, 548 F.3d 961, 978 (11th Cir. 2008). Pursuant to 18 U.S.C. § 924(a)(2), any person convicted of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g), "shall be imprisoned not more than 10 years." 18 U.S.C. § 924(a)(2). However, under 18 U.S.C. § 924(e)(1), a person convicted under § 922(g) who has three previous convictions in any court for violent felonies or serious drug offenses—which is the case here—is subject to a mandatory minimum sentence of 15 years' imprisonment. 18 U.S.C. § 924(e)(1). The government need not allege in its indictment or prove beyond a reasonable doubt that a defendant had prior convictions in order for a sentencing court to use those convictions for purposes of enhancing a sentence. *Almendarez–Torres v. United States*, 523 U.S. 224, 226–27, 118 S. Ct. 1219, 1222–23, 140 L.Ed.2d 350 (1998).

As Hom properly concedes, *Almendarez-Torres* remains good law; hence, the district courts may determine both the existence of prior convictions and the factual nature of those convictions for Armed Career Criminal Act purposes. *See*

*United States v. Weeks,* 711 F.3d 1255, 1259 (11th Cir. 2013), *cert. denied* (No. 13-5563) (U.S. Oct. 7, 2013).

IV.

For the reasons stated in parts I, II and III, Hom's conviction and sentence are

AFFIRMED.