[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14605
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cr-20030-KMW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARLIN ABEL VALENCIA MERO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 10, 2021)

Before NEWSOM, LAGOA and BRASHER, Circuit Judges.

PER CURIAM:

Darlin Abel Valencia Mero appeals his 108-month sentence for conspiracy to possess and possession with intent to distribute cocaine and conspiracy to operate and embark and operating and embarking in a semi-submersible vessel without nationality. Mero argues that the district court erred in applying a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing a firearm at the time of the commission of the drug offense. After careful review, we affirm.

## I

The facts of the case are well-known to the parties, and so we'll repeat them only briefly. On December 23, 2018, the U.S. Coast Guard stopped a self-propelled semi-submersible (SPSS) vessel (*i.e.*, a narco-submarine) in international waters. On board the vessel, the Coast Guard found 769 kilograms of cocaine and four individuals, one of whom was Mero. Mero identified himself as the master of the vessel and told the Coast Guard that he was from Ecuador. The Coast Guard also found on board in the vessel's helm a rusted firearm with a spent round casing inside the chamber and a missing spring.

Mero pleaded guilty to a four-count indictment of drug trafficking and conspiracy, and a probation officer prepared a pre-sentence investigation report (PSI). Mero objected to the PSI's application of a two-level sentencing enhancement under U.S.S.G. § 2D1.1(b)(1) for the firearm found on the vessel. At a hearing, Mero's attorney argued that he didn't think the firearm was operable

2

because a spring had fallen out of it during the voyage.  At the same hearing, a Drug Enforcement Administration (DEA) Agent testified that the firearm was extremely rusted when he received the firearm and that the round inside the firearm's chamber was rusted, rendering it inoperable.  He testified that he believed that the weapon was inoperable when the Coast Guard seized it.

At Mero's final sentencing hearing, the district court denied Mero's objection to the two-level enhancement under § 2D1.1(b)(1).  The district court noted that there had been a vigorous discussion regarding the two-level enhancement at a sentencing hearing for another codefendant, and the district court believed that the correct calculation would be to apply the § 2D1.1(b)(1) enhancement because the defendants, including Mero, constructively possessed the firearm, making the firearm's connection to the offense not clearly improbable.  After granting Mero the two-level safety-valve reduction pursuant to § 5C1.2(a)(2), Mero's total offense level was 37 with a range of 210 to 262 months' imprisonment.  The district court sentenced Mero to 108 months' imprisonment followed by five years of supervised release.[1]

---

[1] We review a district court's factual findings underlying its sentencing determination for clear error and the application of those facts to the guidelines de novo. *United States v. Williams*, 527 F.3d 1235, 1247–48 (11th Cir. 2008).

**II**

On appeal, Mero raises one issue—whether the district court erred in overruling his objection to the two-level enhancement under U.S.S.G. § 2D1.1(b)(1). He argues that § 2D1.1(b)(1) shouldn't apply to his offense because he never actually possessed the firearm and because the firearm's inoperability rendered it clearly improbable that the firearm was connected to the offense.

The sentencing guidelines provide for a two-level enhancement if "a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The application notes to this provision instruct that the "enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id*. cmt. n. 11(A). The government bears the initial burden of showing, by a preponderance of the evidence, that the weapon was present at the site of the charged conduct or that the defendant possessed it during conduct associated with the offense of conviction. *United States v. George*, 872 F.3d 1197, 1204 (11th Cir. 2017). If the government meets this initial burden, then the burden shifts to the defendant to show that the connection between the offense and the weapon was "clearly improbable." *Id*.

Here, the government met its initial burden to show that the weapon was present at the site of the drug trafficking conspiracy. Mero doesn't contest the fact

that the firearm was found on the vessel, and the proximity between the firearm and the drugs on the vessel was sufficient to show that the weapon was present at the site of the charged conduct. *See United States v. Carillo-Ayala*, 713 F.3d 82, 91 (11th Cir. 2013) (recognizing that "proximity between firearms and drugs, without more, is sufficient to meet the government's initial burden under § 2D1.1(b)(1)"). Furthermore, Mero's argument that § 2D1.1(b)(1) requires that he actually possess the firearm lacks weight. Possession for § 2(D)1.1(b)(1)'s purposes can be actual or constructive, and constructive possession occurs when a defendant exercises "ownership, dominion, or control over an object itself *or control over the premises in which the object is concealed*." *United States v. Villarreal*, 613 F.3d 1344, 1359 (11th Cir. 2010) (emphasis added) (quotation marks omitted). Mero was the master of the vessel and so clearly exercised control over the premises in which the firearm was concealed. Therefore, he constructively possessed the firearm.

Mero has also failed to show that the firearm's connection to the offense was clearly improbable. Even though the firearm was rusted and inoperable at the time of seizure, there's no evidence that the firearm was inoperable from the beginning of his and his co-conspirators' journey. Moreover, there is no requirement that a weapon be operable to be "connected with" the offense. *See Carillo-Ayala*, 713 F.3d at 95 ("The gun's presence made the defendant's conduct more culpable and

5

supported the finding of a 'connection' between the offense and the firearm."); *cf. also United States v. Rhind*, 289 F.3d 690, 695 (11th Cir. 2002) (holding that there is "no requirement that the firearms be loaded or operable to meet the 'in connection with' requirement" in U.S.S.G. § 2K2.1(b)(5)).  It's also not clearly improbable that a firearm brought onto the vessel by one of Mero's co-conspirators in a drug trafficking mission would be related to the drug trafficking.  *United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005) (affirming a district court's finding that possession of a firearm was in furtherance of a drug conspiracy where the firearm was found in proximity to the drugs); *see also United States v. Smith*, 127 F.3d 1388, 1390 (11th Cir. 1997) ("[§ 2D1.1(b)(1)] is to be applied whenever a firearm is possessed during conduct relevant to the offense of conviction.").

**AFFIRMED.**

6